SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Terry C. Jones (A-19-12) (070733)**

**Argued October 21, 2013 -- Decided September 23, 2014**

**PER CURIUM**

In this appeal concerning a petition for post-conviction relief (PCR), the Court addresses whether defendant has alleged facts that, when viewed in the light most favorable to him, are sufficient to demonstrate a reasonable likelihood of success on his ineffective assistance of counsel claims, such that an evidentiary hearing was warranted.

On May 3, 2005, a jury convicted defendant, Terry Jones, of two counts of sexual assault and two counts of criminal sexual contact. The charges involved allegations that, on two occasions in 2003, defendant raped nineteen-year-old K.A., a Florida resident, while she was living with him and his family in New Jersey. At trial, defendant did not take the stand in his own defense. On direct appeal, the Appellate Division affirmed the conviction, remanding only for the criminal sexual contact counts to be merged into the sexual assault counts. This Court denied defendant's petition for certification.

On October 14, 2008, defendant filed a pro se PCR petition, alleging ineffective assistance of counsel. An amended verified PCR petition, dated March 13, 2009, was filed with the assistance of assigned counsel. In his petition, defendant claims that defense counsel was ineffective for failing to (1) procure the appearance of an alibi witness (Brenadette Brame) who would have provided exculpatory and corroborative evidence that would have supported the defense; (2) obtain and introduce into evidence phone records that would have corroborated the defense's theory of why K.A. fabricated the sexual assault charges against defendant; and (3) advise defendant that, if he were to testify, his criminal record would be "sanitized," and the jury could be informed only that he had a prior conviction for "a fourth-degree crime," not "endangering the welfare of a child."

On July 31, 2009, the PCR court denied defendant's petition without conducting an evidentiary hearing. In respect of the failure to call Brame as a witness, the PCR court noted that defendant had not provided an affidavit addressing her willingness and availability to testify. The court also found that, even if Brame's statement were true, it would not provide defendant with an alibi because her testimony would not directly contradict K.A.'s version of events. Regarding the telephone records, the PCR court found that the fact that defendant spoke to K.A.'s mother was not exculpatory. Finally, the court determined that defendant's claim that he would have testified if properly advised that his prior conviction would be sanitized was a "bald assertion." The PCR court noted that defendant explicitly informed the trial court that he understood his right to testify and did not wish to do so.

On May 2, 2012, the Appellate Division affirmed, holding that defendant had not presented a prima facie case of ineffective assistance of counsel and therefore was not entitled to an evidentiary hearing on his claims. This Court granted defendant's petition for certification, "limited to the issue whether defendant was entitled to an evidentiary hearing on his petition for post-conviction relief." State v. Jones, 212 N.J. 458 (2012).

**HELD**: Viewing the facts in the light most favorable to him, defendant presented a close but creditable prima facie case of ineffective assistance, entitling him to an evidentiary hearing under Rule 3:22-10(b).

1. The accused in a criminal prosecution has "the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks omitted). For an ineffective assistance claim, a defendant must show that counsel's performance was objectively deficient and that "the deficient performance prejudiced the defense[,] . . . depriv[ing] the defendant of a fair trial, a trial whose result is reliable." Strickland, supra, 466 U.S. at 687. Thus, to succeed in making a prima facie case, there must be "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Fritz, 105 N.J. 42, 52, 60-61 (1987) (quoting Strickland, supra, 466 U.S. at 694) (adopting Strickland approach). (pp. 13-14)

1

2. Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus. While evidentiary hearings are not required in PCR proceedings, Rule 3:22-10 provides courts the discretion to grant an evidentiary hearing and take oral testimony. If a defendant presents a prima facie case in support of PCR, an evidentiary hearing generally should be conducted. When determining whether to conduct an evidentiary hearing, the PCR court should view the facts in the light most favorable to the defendant. If, with the facts so viewed, the PCR claim has a reasonable probability of being meritorious, then the defendant should ordinarily receive an evidentiary hearing. (pp. 14-16)

3. Here, defendant's petition was not accompanied by an affidavit or certification setting forth the facts that he wished to present. Nonetheless, the Court can determine on this record how Brame's testimony would have bolstered the defense, because she spoke to the prosecutor's office, and a notice of alibi was filed alerting the State about her. Further, although defendant's simple verification does not comply with the Court Rules, the Court accepts the statement as indicating that defendant would have testified if he properly understood how sanitization would work. Defendant's understanding and counsel's reason for failing to secure Brame's presence at trial are matters better left to exploration through the PCR process. (pp. 16-18)

4. Viewing the facts in the light most favorable to defendant, Brame would have testified that defendant and K.A. had been arguing, that she (Brame) had spent the night of the second alleged assault with defendant, and that she had engaged in sexual relations with defendant. That testimony would have been consistent with defendant's version of events and could have raised reasonable doubt in the minds of the jurors. Brame's statement also corroborated the growing dispute between defendant and K.A. over her refusal to follow his rules and his stated intention to return her to Florida. The statement thus lent overall support to defendant's theory of the false accusations. Although the timing and motivation of Brame's statement and her reason for not voluntarily appearing to testify at trial raise important questions, those questions cannot be assessed and resolved without determining credibility. The PCR court should have heard from the witnesses, including trial counsel, whose reason for not ensuring the testimony of an apparent alibi and corroborative witness is unexplained on the record as it presently stands. (pp. 18-21)

5. With regard to defendant's claim that counsel misinformed him about the sanitization of his prior conviction, and, in so doing, led defendant to forego his right to take the stand in his own defense, the Court finds that the record is entirely compatible with defendant's claim. Defendant's statements to the trial court about choosing not to testify are consistent with a decision not to testify based on the incorrect understanding that cross-examination about his prior conviction would include discussion of the specific past offense for which he had been convicted. Although the Court criticizes PCR counsel's failure to follow the Court Rules, the Court accepts defendant's verification that trial counsel had not informed him that the prior conviction would be sanitized. The Court further accepts that had defendant testified, his testimony would have been consistent with the defense's theory of fabrication by K.A. and the testimony of Brame and other witnesses -- namely, that K.A. did not want to return to Florida. Such a defense may have impacted the jury and altered the outcome. (pp. 21-22)

6. This case turned on a question of credibility. Defendant raises ineffective assistance of counsel claims about evidence that, had it been introduced, may have bolstered the jury's belief in his version of events. The issues involving Brame's testimony and the sanitization of defendant's prior conviction presented claims that bore directly on his entitlement to PCR. Viewed most favorably to defendant, the facts underlying his claims presented a close but creditable prima facie case of ineffective assistance. The PCR court should have resolved the disputed facts involved in these ineffective assistance of counsel claims only after an evidentiary hearing had been conducted. (pp. 22-23)

7. Similarly, defendant's ineffective assistance of counsel claim with respect to the admission of phone records should have been resolved only after conducting an evidentiary hearing. The admission of the records could have corroborated defendant's defense that he was actively talking with K.A.'s mother, purportedly about expelling K.A. from his home and sending her back to Florida. (pp. 23)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the trial court for an evidentiary hearing on the three claims of ineffective assistance of counsel raised before this Court.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in this opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

TERRY CORNELIOUS JONES,

    Defendant-Appellant.

Argued October 21, 2013 – Decided September 23, 2014

On certification to the Superior Court, Appellate Division.

Lois A. De Julio, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ms. De Julio and Brian D. Driscoll, Designated Counsel, on the briefs).

Jenny M. Hsu, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General of New Jersey, attorney).

PER CURIAM

Defendant, Terry Jones, was convicted of two counts of sexual assault and two counts of criminal sexual contact. The charges involved allegations that, on two occasions about a week apart, defendant raped a nineteen-year-old girl who was living with him and his family. This appeal concerns his petition for post-conviction relief (PCR), in which he claims, in relevant

part, that defense counsel was ineffective for failing to (1) procure the appearance of an alibi witness who would have provided exculpatory and corroborative evidence that would have supported his defense; (2) obtain and introduce into evidence phone records that would have corroborated the defense's theory of why the accuser fabricated the sexual assault charges against him; and (3) advise defendant that, if he were to testify, the jury could be informed only that he had a prior conviction for "a fourth-degree crime" and not a conviction for endangering the welfare of a child.  Defendant did not take the stand in his own defense.

The PCR court denied defendant's petition without conducting an evidentiary hearing, and the Appellate Division affirmed.  We granted certification solely to consider defendant's assertion that his claims of ineffective assistance of counsel (IAC) deserved an evidentiary hearing.

This matter came down to a question of whom to believe -- defendant or his accuser -- notwithstanding the presentation of DNA evidence at trial.  We cannot dismiss defendant's assertions of ineffective assistance of counsel by calling them simple matters of strategy.  Defendant raises IAC claims about the failure of counsel to introduce evidence that may have bolstered the credibility of his version of what occurred.  The first and third issues raised by defendant could not be properly assessed

2

without a fair opportunity for the development of evidence. The resolution of disputed facts material to those issues bore directly on defendant's entitlement to post-conviction relief. The disputed facts should have been judged in the light most favorable to defendant. See State v. Porter, 216 N.J. 343, 353-55 (2013). Viewing the facts under that standard, defendant presented a close but creditable prima facie case of ineffective assistance, entitling him to an evidentiary hearing under Rule 3:22-10(b).

We therefore reverse the judgment of the Appellate Division and remand for an evidentiary hearing on defendant's PCR petition.

I.

We present the facts from defendant's trial and as supplemented by the present PCR record. In January 2003, nineteen-year-old K.A. moved from Florida to defendant's home in New Jersey. K.A. came to New Jersey on the recommendation of her parents in order to distance herself from a ne'er-do-well boyfriend in Florida, join defendant's household, and attend a local community college. Defendant was an ex-boyfriend of her mother's. K.A. had known him all her life and regarded him as a father figure. Defendant's brother, Denard Williams, and his six-year-old nephew also lived with him.

Peacefulness did not follow, however. According to

3

Williams, conflict arose over K.A.'s desire to use her car to come and go with friends as she wished, contrary to defendant's rules governing K.A.'s behavior. At some point before the allegations at the core of this matter arose, Williams observed that K.A.'s bags had been packed as if she were leaving. Defendant did not testify, so the defense's theory about this conflict emerged through Williams's testimony.

K.A. testified. She asserted that defendant raped her on March 18 and 22, 2003. On both occasions, she stated that he entered her room drunk around 4:00 a.m., ignored her protests, overcame her physical struggles, and held her down while he penetrated her. She said that defendant used a condom on each occasion.

K.A. testified that, after the first sexual assault, she did not go to the police or tell anyone other than her then-boyfriend, William Godbolt, because she was frightened and did not think she would be believed. However, the morning after the second alleged assault, she contacted a young girl, T.C., through an AOL chat room, and asked T.C. to call Godbolt or the police on her behalf.[1] When help did not arrive, K.A. went to the local police headquarters around 11:00 a.m., without changing her clothing. She brought with her a used condom,

---

[1] According to T.C.'s and Godbolt's testimony, T.C. contacted Godbolt, but he was confused by the message and failed to act on it.

which she said she had removed from defendant's trash, wrapped up in a napkin, and transported in a waist purse. K.A. told detectives who interviewed her about the March 22 incident. However, she did not mention the March 18 incident until a few months before the trial was to begin, which was almost two years later.

K.A. was transported to a hospital for examination. A Sexual Assault Nurse Examiner, who testified at trial, discovered faint bruising and scratches on K.A.'s upper arms but no vaginal injuries. The nurse explained that vaginal abrasion is rare in sexual assault cases, except in instances of gang rape or penetration with an object. K.A.'s clothes tested negative for blood and semen. DNA testing of the condom showed defendant's semen and bodily fluids, and K.A.'s DNA, as well as an anomalous "peak," which, a testifying DNA expert explained, could have been the result of contamination during testing, or could possibly have represented the DNA of a third person.

Police arrested defendant at his home. They also took the towel that K.A. said defendant had worn when he entered her room and the bedspread from K.A.'s room. Both articles tested positive for semen, but no DNA tests were performed on those objects. When questioned after waiving his Miranda[2] rights,

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

defendant first insisted that K.A.'s allegations were impossible, then, after being told about the condom, stated "Maybe this could have happened" because he had been drinking. He then refused to talk to police further. Defendant never confessed or admitted to the assaults.

At trial, in addition to K.A.'s testimony, the State presented testimony from Godbolt, T.C., the officers who had interviewed K.A. and defendant, the nurse who had examined K.A., and the technicians who had analyzed the clothing, condom, and DNA samples. Defendant's defense theory was that K.A. had fabricated the story of the assaults to retaliate because he was going to send her back to Florida due to tensions over the use of her car and her desire for more freedom to go out with friends.

Defendant did not testify on his own behalf. His brother, Williams, testified about the conflicts between K.A. and defendant. Williams also stated that he had not heard anything on the night of the first incident even though his bedroom was immediately below the third-floor room where, K.A. testified, the assaults had occurred. He had been out of town at the time of the second incident. Also, Williams stated that during the days between the first and second alleged incidents, he had not noticed any difference in behavior between defendant and K.A.

Notably, a potential alibi witness, Brenadette Brame, did

6

not testify.[3]  Her previously recorded statement to the prosecutor's office, which was not introduced at trial, indicated that she was with defendant on the evening of March 21, 2003, and went back to his house with him around 2:00 or 3:00 a.m. on March 22.  In her statement, Brame reported that defendant and K.A. previously had been arguing over K.A.'s behavior, K.A.'s bags had been packed, and defendant had threatened to send K.A. back to Florida.  Brame said that, when she and defendant returned to defendant's home on March 22, defendant and K.A. got into an argument.  Defendant called K.A.'s mother to tell her that he was going to send K.A. back to Florida the next day.  Brame also stated that she and defendant had sexual relations in a bedroom on the third floor during the early morning hours of March 22, that he used a condom, and that afterwards he threw the condom in the trash.

At the end of defendant's case, defense counsel indicated in a sidebar that he was waiting for an unidentified witness. Earlier during the trial, defense counsel had stated in colloquy that a notice of alibi had been filed with respect to Brame's testimony.  However, when the unidentified witness was not found in the courtroom and the trial court expressed unwillingness to delay further, the defense did not ask for a continuance and

---

[3] From the record it appears that Brame was expected to be a voluntary witness.  Defendant had filed a notice of alibi for her.  There is no evidence that defense counsel subpoenaed her.

simply rested.  Defense counsel did not state the identity of the absent witness.

Prior to trial, defense counsel attempted, but failed, to obtain telephone records showing calls placed from defendant's cell phone to K.A.'s mother.  Those records, which were appended to defendant's PCR brief, show a call lasting sixty-six minutes at 10:26 p.m. on Friday, March 21, 2003, and a second call lasting one minute at 4:38 a.m. on Saturday, March 22, 2003.  In colloquy during trial, defense counsel stated that the phone records would be relevant to rebut anticipated testimony by K.A.'s mother that defendant had not called her about sending K.A. back to her.  However, the prosecution never called K.A.'s mother as a witness.  The telephone records' corroborative effect was not otherwise addressed and they did not become part of the evidence presented to the jury.

On May 3, 2005, the jury convicted defendant on two counts of sexual assault and two counts of criminal sexual contact. The court sentenced defendant to two consecutive seven-year sentences on the sexual assault counts for an aggregate sentence of fourteen years, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, as well as community supervision for life and registration pursuant to Megan's Law, N.J.S.A. 2C:7-1 to -23. On direct appeal, the Appellate Division affirmed the conviction, remanding only for the criminal sexual contact

8

counts to be merged into the sexual assault counts, with no resulting change in defendant's sentence.  Defendant petitioned for certification, which was denied.

On October 14, 2008, defendant filed a pro se petition for post-conviction relief, asserting factually scanty claims of ineffective assistance of counsel.  An amended verified PCR petition, dated March 13, 2009, was filed with the assistance of assigned counsel.  The amended petition's claims of IAC were based on trial counsel's failure to procure Brame as a witness, trial counsel's failure to present the phone records showing that defendant had telephoned K.A.'s mother the evening before and during the early morning when the second incident allegedly occurred, and trial counsel's alleged failure to inform defendant that if he were to testify his criminal record would be "sanitized," as well as other grounds not relevant to this proceeding.  By sanitization of his record, defendant referred to the court's ruling that his prior conviction would be described in front of the jury only as a "fourth-degree conviction" and not as "a conviction for endangering the welfare of a child."

On July 31, 2009, the PCR court denied defendant's petition without conducting an evidentiary hearing on any of the issues raised.  In respect of the failure to call Brame as a witness, the court noted that defendant had not provided an affidavit

addressing her willingness and availability to testify. The court found that, even if Brame's statement were true, it would not provide defendant with an alibi because defendant could have snuck out of the room to commit the assault. Thus, the court concluded that the testimony did not directly contradict K.A.'s version of events. The court labeled defendant's assertion that he would have testified if properly advised that his prior conviction would be sanitized a "bald assertion," and noted that defendant explicitly informed the court that he understood his right to testify and did not wish to do so. Finally, regarding the telephone records, the court found that there was nothing exculpatory in the mere fact that defendant spoke to K.A.'s mother on the phone.

Defendant appealed the denial of post-conviction relief and the Appellate Division affirmed in an unpublished opinion filed on May 2, 2012. For substantially the reasons given by the PCR court, the Appellate Division held that defendant had not presented a prima facie case of ineffective assistance of counsel and therefore was not entitled to an evidentiary hearing on his claims. We granted defendant's petition for certification, "limited to the issue whether defendant was entitled to an evidentiary hearing on his petition for post-conviction relief." State v. Jones, 212 N.J. 458, 458 (2012).

Defendant argues that he established a prima facie case for post-conviction relief and was therefore entitled to an evidentiary hearing. In respect of Brame's testimony, defendant notes that, although no affidavit was submitted, her sworn and notarized statement to the prosecutor's office was included in the appendix to his PCR brief. Defendant asserts that Brame's testimony would have supported his case both by providing an alibi for one of the times K.A. stated defendant assaulted her, and by supporting defendant's theory that K.A. falsely accused him because she was angry that he was going to send her back to Florida. Defendant maintains that, because Brame's testimony could have seriously undermined K.A.'s credibility, it could have changed the outcome of the case.

Defendant suggests that the phone records, which were included in the appendix to his PCR brief, corroborate Brame's statement that defendant had called K.A.'s mother between 4:00 and 5:00 a.m. on March 22. Defendant also argues that the phone records would have supported his theory that K.A. fabricated the assaults in retaliation because she went to the police shortly after the calls to her mother were made. He further asserts that the timing of the second call undermines K.A.'s testimony, which would have placed defendant in her bedroom at about that

time.  Defendant therefore maintains that the PCR court should have conducted an evidentiary hearing on the issue of trial counsel's failure to introduce the phone records at trial.

Finally, defendant argues that he made out a prima facie case of ineffective assistance of counsel concerning trial counsel's failure to properly advise him, in connection with his right to testify, that his prior conviction would be sanitized. Defendant asserts that the PCR court's reliance on the colloquy in which defendant waived his right to testify is misplaced because he is arguing that his voluntary decision not to testify was based on misinformation that he received in off-the-record discussions with his attorney.  Defendant further notes that his testimony would have been particularly important because the case turned on whether the jury believed K.A.'s testimony or defendant's contrary version of events.

B.

The State argues that defendant failed to make out a prima facie case of ineffective assistance of counsel in respect of any of the issues raised.  First, the State argues that defense counsel's decision not to call Brame as a witness was an informed strategic choice made after adequate investigation. Specifically, the State asserts that her testimony would have provided only a weak alibi because (1) the forensic evidence excluded her as a possible contributor to the DNA found on the

12

condom that K.A. brought to the police;[4] (2) she had come forward with her statement at a late date; and (3) defendant had failed to mention an alibi in his statements to police.  In respect of the phone records, the State argues that defense counsel was not ineffective for failing to introduce them because they were not relevant to any issues in dispute at trial and because the records themselves do not establish the content of the call.  Finally, the State argues that defendant is not entitled to an evidentiary hearing on the issue of counsel's advice about whether to testify because the trial court adequately informed defendant of his right to testify on the record and because defendant has entirely failed to establish what testimony he would have given and how it would have changed the outcome of the trial.

### III.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that the accused shall have the right to the assistance of counsel in a criminal prosecution.  U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10.  The right is "the right to the effective

---

[4] This information was provided by the State as part of its Appendix filed with this Court.  It does not appear to have been part of the evidence at trial or to have been submitted to the PCR court.  We have no affidavit by defense trial counsel or any findings by the PCR court on the asserted trial-strategy conclusion advanced by the State in respect of the DNA test results.

assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674, 692 (1984) (internal quotation marks omitted); see State v. Fritz, 105 N.J. 42, 58 (1987) (adopting Strickland approach to assessing whether counsel had acted in accord with constitutional requirements). A defendant must show that counsel's performance was objectively deficient and that "the deficient performance prejudiced the defense[,] . . . depriv[ing] the defendant of a fair trial, a trial whose result is reliable." Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Thus, to succeed in making a prima facie case, there must be "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Fritz, supra, 105 N.J. at 52, 60-61 (quoting Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 52 (quoting Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698).

In New Jersey, PCR is our analogue to the federal writ of habeas corpus. See State v. Afanador, 151 N.J. 41, 49 (1997); State v. Preciose, 129 N.J. 451, 459 (1992); Pressler & Verniero, Current N.J. Court Rules, comment on R. 3:22-1 (2014). Neither a substitute for direct appeal, see R. 3:22-3, nor a

14

vehicle to relitigate the merits of cases resolved on their merits, see R. 3:22-5, PCR proceedings offer the best opportunity for ineffective assistance claims to be reviewed. Preciose, supra, 129 N.J. at 459-60. As stated in Preciose, "[i]neffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." Id. at 460 (citing R. 3:22-4(a) and State v. Mitchell, 126 N.J. 565, 585 (1992)).

Further, while evidentiary hearings are not required, Rule 3:22-10 provides discretion to the PCR court to grant an evidentiary hearing and take oral testimony. See id. at 462. In State v. Marshall, we explained that, if a defendant has presented a prima facie case in support of PCR, an evidentiary hearing generally should be conducted. 148 N.J. 89, 158, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997). When determining the propriety of conducting an evidentiary hearing, the PCR court should view the facts in the light most favorable to the defendant. Ibid. (citing Preciose, supra, 129 N.J. at 462-63); see also Porter, supra, 216 N.J. at 354 (stating same); R. 3:22-10(b). If, with the facts so viewed, the PCR claim has a reasonable probability of being meritorious, then the defendant should ordinarily receive an evidentiary hearing in order to prove his entitlement to relief. Marshall, supra, 148 N.J. at 158.

15

IV.

Here, defendant argues that he received ineffective assistance of counsel based on three separate alleged errors by trial counsel. Because the PCR court denied defendant's petition without an evidentiary hearing, the question before this Court is whether defendant has alleged any facts that, when viewed in the light most favorable to him, are sufficient to demonstrate a reasonable likelihood of success on his PCR claim.

A.

In order for a claim of ineffective assistance of counsel to entitle a PCR petitioner to an evidentiary hearing, "bald assertions" are not enough -- rather, the defendant "'must allege facts sufficient to demonstrate counsel's alleged substandard performance.'" Porter, supra, 216 N.J. at 355 (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999)). At the outset, that requirement presents a hurdle for defendant to overcome.

We duly note the State's valid point, stressed in its argument before our Court, that defendant's petition was not accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity the facts that he wished to present. Instead, PCR counsel included a cryptic footnote in the Amended Petition for Post-Conviction Relief stating that "[p]etitioner incorporates the Brief Statement of

16

Facts into the Amended Verified Petition, which constitutes his verification in support of post-conviction relief." Defendant signed a simple verification attached to the Amended Petition. In the Brief and Appendix filed in support of Defendant-Petitioner's Petition for Post-Conviction Relief, PCR counsel affixed a footnote to the title of the Statement of Facts. That footnote cross-referenced the footnote in the Amended Verified Petition, stating: "The Amended Verified Petition incorporates the Statement of Facts. It represents Petitioner's verification in support of post-conviction relief."

Counsel's practice is not in compliance with the Court Rules, which require that factual assertions in a petition for post-conviction relief be made by affidavit or certification in order to secure an evidentiary hearing. See R. 3:22-10(c). The reason that we do not visit on defendant the failings of counsel in this instance is that we know what Brame told the prosecutor's office and how her testimony would have bolstered defendant's defense. A notice of alibi had been filed alerting the State about Brame, so her testimony presumably was expected to be consistent with defendant's defense and would have provided some evidence of alibi. However, for whatever reason, defense counsel apparently did not secure her presence. His reasons for not doing so are better left to exploration through the PCR process.

17

Furthermore, although defendant's verification is unorthodox, we accept it, for the purposes of this appeal, as indicating that he would have testified if, as he asserts, he properly understood how sanitization would work. That is a matter that may be more fully revealed through an evidentiary hearing, and we express no view on any anticipated finding that the PCR court may make based on a full record. We disapprove of the pleading and submission practice engaged in here. However, we address the merits in order to speed resolution of defendant's assertions about trial counsel's alleged ineffectiveness, which deserve proper scrutiny.

B.

With respect to defendant's claims of IAC based on trial counsel's failure to procure Brame's testimony and to advise him about sanitization of his prior conviction, the evidence presents closely poised questions. We turn first to Brame.

Viewing the facts in the light most favorable to defendant, Brame was a witness who, based on her statement given to the prosecution on October 22, 2004, would have testified that defendant and K.A. had been arguing, that she had spent the night of March 21 to March 22, 2003, with defendant, and that defendant had thrown a used condom in the trash after engaging in sexual relations with her. That testimony would have been consistent with defendant's version of events and perhaps could

18

have raised reasonable doubt in the mind of one or more of the jurors.

Moreover, Brame's statement corroborated defendant's version of the growing dispute between him and K.A. over her refusal to follow his rules and his stated intention to return her to Florida, which K.A. did not want.  The statement thus lent overall support to defendant's theory of the false accusations, even though Brame's statement about her presence at the home only covered the date of the second alleged incident.  However, it bears repeating that K.A. did not come forward with her allegation about the first asserted sexual assault until a few months before trial.  There were inconsistencies in the State's case with which the defense could work in making an argument using Brame's testimony in aid of raising reasonable doubt.  Although the timing and motivation of Brame's statement and her reason for not voluntarily appearing to testify as apparently had been expected raise important questions, those questions cannot be assessed and resolved without determining credibility.  See Porter, supra, 216 N.J. at 355 ("Even a suspicious or questionable affidavit supporting a PCR petition 'must be tested for credibility and cannot be summarily rejected.'" (quoting State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008))).  In order to resolve the issue, the PCR court should have heard from the witnesses, including trial

19

counsel, whose reason for not ensuring the testimony of an apparent alibi and corroborative witness is unexplained on the record as it presently stands.

We acknowledge that Brame's potential testimony could be undermined by the fact that defendant made no mention to police of having spent the night with her when he was questioned after his arrest. She also did not come forward with her statement until a year and a half after the events, a point her statement lightly addresses. Brame's personal relationship with defendant also presents a self-interested reason for testifying in a way that supports defendant. It may simply be that trial counsel made a strategic decision not to call Brame as a witness.[5] However, the issue deserved an evidentiary hearing, particularly due to the combined effect of having neither Brame nor defendant testify to present defendant's version of why the accusation was false.

No doubt, according to the trial testimony, defendant's DNA and bodily fluids were present in the condom that K.A. presented to police, as well as the DNA of K.A., who handled the condom. However powerful, the DNA evidence was not dispositive, and

---

[5] Viewed most favorably to defendant, the colloquy between defense counsel and the court about whether the defense was ready to rest suggests that counsel was waiting for another witness to arrive. Defendant's PCR petition claims that this was Brame, suggesting that counsel had not made a strategic decision not to call her.

20

defendant had a defense to present.  That leads to defendant's claim concerning misinformation about the sanitization of his prior conviction that assertedly led him to forego his right to take the stand in his own defense.

The PCR court called defendant's allegation a "bald assertion," and held, on the basis of defendant's responses to the court's voir dire on his waiver, that defendant was "adequately informed of his right to testify at trial." However, sanitization of the prior conviction was never mentioned during the trial court's voir dire.  By pointing that out, we are in no way criticizing the trial court, which had no obligation to so inquire and risked intruding on private attorney-client confidences had it explored the nature of the exchange between defendant and counsel.  We nonetheless are cognizant that defendant's responses to the court about choosing not to testify are also consistent with a decision not to testify based on the incorrect understanding that cross-examination about his prior conviction would include discussion of the specific past offense for which he had been convicted. Thus, the record is entirely compatible with defendant's claim. It is conceivable that defense counsel could have neglected to inform defendant properly on the issue.

Moreover, defendant verified, through his petition, his assertion that counsel had not informed him that the prior

21

conviction would be sanitized. Although we have criticized PCR counsel's format for defendant's swearing to the information, we accept the verification for purposes of the present analysis. We further accept that defendant's testimony would have been in line with the defense's theory about the reason for an asserted fabrication by K.A. and thus would have been consistent with Williams's testimony as well as Brame's statement to the prosecution -- namely, that K.A. did not want to be sent back to her mother in Florida.[6] Such a defense may well have had an effect on the jury. It would have taken only one juror -- with reasonable doubt arising from the divergent accounts given by the accuser and the accused -- to have altered the outcome for defendant.

Notwithstanding the DNA evidence, this case turned on a question of credibility. Defendant raises IAC claims about evidence that, had it been introduced, may have bolstered the jury's belief in his version of events. The issues involving Brame's testimony and the sanitization of defendant's prior conviction presented IAC claims that bore directly on defendant's entitlement to post-conviction relief. The disputed

---

[6] Defendant's certification to the Notice of Alibi, prepared in respect of Brame's testimony, is also consistent with the defense outlined. The certification provides further support that defendant's testimony would have been consistent with his certification and the defensive strategy he was attempting to put before the jury through a variety of sources.

facts underlying those claims cannot be resolved on the present record.  However, viewed most favorably to defendant, they presented a close but creditable prima facie case of ineffective assistance.  We hold that the PCR court should have resolved the disputed facts involved in these IAC claims only after an evidentiary hearing had been conducted.

C.

Finally, with respect to the phone records, their admission would have corroborated defendant's defense that he was actively talking with K.A.'s mother, purportedly about expelling K.A. from his home and sending her back to Florida.  This IAC claim deserves consideration in conjunction with the other two claims of IAC that, we hold, should have been resolved only after an evidentiary hearing was conducted.  Therefore, we remand this issue along with the two other issues for an evidentiary PCR hearing.

V.

The judgment of the Appellate Division is reversed and the matter remanded to the trial court for an evidentiary hearing on the three claims of ineffective assistance of counsel raised by defendant before this Court.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in this opinion.

23

SUPREME COURT OF NEW JERSEY

NO.    A-19                                    SEPTEMBER TERM 2012

ON CERTIFICATION TO        Appellate Division, Superior Court


STATE OF NEW JERSEY,

      Plaintiff-Respondent,

          v.

TERRY CORNELIOUS JONES,

      Defendant-Appellant.


DECIDED          September 23, 2014
            Chief Justice Rabner                    PRESIDING
OPINION BY              PER CURIAM
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY


| CHECKLIST | REVERSE AND REMAND | |
|-----------|:------------------:|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1