**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3998-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEITH V. CUFF, a/k/a
KEITH CUFF, and
KEITH V. CUFF, JR.,

    Defendant-Appellant.

_____

Argued June 3, 2025 – Decided June 27, 2025

Before Judges Gilson, Bishop-Thompson, and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-05-1446.

Jeffrey L. Weinstein, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Jeffrey L. Weinstein, on the briefs).

Maura Murphy Sullivan, Assistant Prosecutor, argued the cause for respondent (Grace C. MacAulay, Camden County Prosecutor, attorney; Maura Murphy Sullivan, of counsel and on the brief).

PER CURIAM

Defendant Keith Cuff appeals from an order dated July 21, 2023, and an amended order dated August 4, 2023, denying his petition for post-conviction relief (PCR) without an evidentiary hearing. He argues that his aggregate sentence is unfairly disparate in comparison to the sentences of his co-defendants; his trial counsel was ineffective for failing to submit a sentencing memorandum and present evidence of mitigating circumstances; and his trial counsel was ineffective for failing to call a witness whom he alleges would have helped his defense. Having conducted a de novo review of the record, we reject defendant's arguments and affirm the amended order denying his petition.

I.

We have previously reviewed defendant's convictions and twice reviewed his sentences. State v. Cuff (Cuff I), No. A-4419-15 (App. Div. Feb. 2, 2018); State v. Cuff (Cuff III), No. A-1451-20 (App. Div. Mar. 31, 2022). The New Jersey Supreme Court has also reviewed defendant's convictions and sentences. State v. Cuff (Cuff II), 239 N.J. 321, 328-30 (2019). Because those opinions detail the facts, we summarize only the facts and procedural history relevant to this appeal.

Defendant and three co-defendants were indicted for fifty-five crimes arising out of six incidents:  five residential robberies and the stop of a stolen vehicle.  A jury convicted defendant of nineteen offenses related to four of those incidents:  (1) a robbery on February 28, 2011 in Cherry Hill; (2) a robbery on March 3, 2011 in Winslow Township; (3) an incident involving a stolen vehicle on March 29, 2011 in Gloucester Township; and (4) a robbery on April 3, 2011 in Gloucester Township.

The armed robberies involved three separate home invasions, during which defendant and co-defendants tied up numerous victims, including two young girls, threatened other victims with guns, and stole a car and over $4,000 in cash.  The other incident arose out of the stop of a vehicle that was suspected to have been involved in criminal activity.  When a police officer pulled over the suspected vehicle, a man jumped out and ran away.  The officer called for backup, and responding officers were able to apprehend the fleeing suspect, who turned out to be defendant.  As officers tracked defendant, they found two handguns.  They later discovered that the vehicle from which defendant had fled had been stolen six months earlier.

Before trial, two co-defendants, Abdul Mansaray and Donte Goree, accepted negotiated plea agreements with the State.  Mansaray pled guilty to

3

one count of third-degree conspiracy to commit theft by unlawful taking, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:20-3; and Goree pled guilty to one count of second-degree conspiracy to commit kidnapping, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:13-1(b). Each of those co-defendants were sentenced to five years in prison, with Goree's sentence being subject to a mandatory period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant and co-defendant Tamir Logan were tried together. At trial, Mansaray testified on behalf of the State and implicated defendant in (1) the robbery that occurred on March 3, 2011; (2) the incident involving the stolen vehicle on March 29, 2011; and (3) the robbery that occurred on April 3, 2011. The defendant's trial lasted twelve days and numerous other witnesses, including ten victims and law enforcement personnel, also testified on behalf of the State.

Based on the evidence presented at trial, a jury convicted defendant of nineteen crimes, including two counts of first-degree armed robbery, N.J.S.A. 2C:15-1; three counts of first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1); one count of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; two counts of second-degree conspiracy to commit robbery or kidnapping, N.J.S.A. 2C:5-2, N.J.S.A. 2C:15-1, and N.J.S.A. 2C:13-1(b)(1); three counts of second-degree unlawful possession of a weapon,

N.J.S.A. 2C:39-5(b); two counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4; one count of second-degree burglary, N.J.S.A. 2C:18-2; two counts of fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4); two counts of fourth-degree unlawful taking of means of conveyance, N.J.S.A. 2C:20-10; and a disorderly persons offense of false imprisonment, N.J.S.A. 2C:13-3. Co-defendant Logan was acquitted of all charges against him.

Defendant was initially sentenced to an aggregate prison term of ninety-eight years, with more than sixty-six years of parole ineligibility. Cuff I, slip op. at 2. On defendant's first appeal, we affirmed all his convictions, except for the two convictions for second-degree conspiracy to commit robbery "and/or" kidnapping. Ibid. We also affirmed defendant's sentences. Ibid.

Defendant filed a petition for certification to the New Jersey Supreme Court, and the Court agreed to review two issues: (1) whether defendant's convictions for first-degree kidnapping should be reversed due to an alleged error in the verdict sheet; and (2) whether the trial court's imposition of certain consecutive sentences was a proper exercise of its discretion. Cuff II, 239 N.J. at 328-30. Regarding the first issue, the Court affirmed defendant's convictions for first-degree kidnapping, holding that the omission of a question concerning

5

second-degree kidnapping from the verdict sheet was not plain error.  Id. at 346-47.  Concerning the second issue, the Court directed the trial court to reconsider its imposition of certain consecutive sentences and the overall fairness of defendant's aggregate sentence.  Id. at 352.  In remanding the matter for resentencing, the Court initially retained jurisdiction.  Id. at 353.

On January 24, 2020, the trial court resentenced defendant and reduced his overall aggregate prison term to seventy years, with just under fifty-eight years of parole ineligibility.  Cuff III, slip op. at 6-8.  Defendant sought review of his new sentence, and the Supreme Court issued an order relinquishing its retained jurisdiction and directing that any challenge to the sentence imposed on remand be filed with this court.  Id. at 8.

Defendant then filed a second appeal, arguing that his reduced sentence was a de facto life sentence that was excessive.  Id. at 2.  We analyzed defendant's arguments but rejected them and affirmed his sentence.  Ibid. Thereafter, the Supreme Court denied certification.  State v. Cuff, 252 N.J. 134 (2022).

In January 2021, defendant filed a petition for post-conviction relief.  In his supporting brief, defendant highlighted the disparity between his aggregate sentence and the sentences of his co-defendants, and alleged ineffective

assistance of his trial counsel. Defendant contended, in relevant part, that his trial counsel had been ineffective by failing to submit a sentencing memorandum before his first sentencing, to argue for certain mitigating factors, and to call Alhaji Mustapha as a witness at trial.

In support of his petition, defendant submitted documents showing that before trial, his counsel had hired an investigator who interviewed Mustapha on October 28, 2015. Mustapha, who was the cousin of Mansaray, provided the following information in his interview:

> [Investigator]: Ok, so around October 17th ---the 16th of October 2015, . . . around two PM, you engaged in a conversation with your cousin, Musa Mansaray regarding his co[-]defendant Keith Cuff, Junior. Is that correct?
>
> [Mustapha]: Yes.
>
> [Investigator]: Ok. Can you just tell me a little bit about that conversation?
>
> [Mustapha]: I basically asked him about what was going on with the case and he let me know that . . . he'd probably have to turn himself in like around the end of October and for me to just try to look out for his kids if I could and I . . . [asked] him like you know what did they [do] . . . and he basically told me . . . [and] I said to him . . . damn, "It's messed up, they['re] trying to make Keith wear all those robberies", and he [said], "[Yeah], I know, that's f[**]ed up but you know I gotta save my black a[**] and do what I gotta do."

7

A-3998-22

[Investigator]: But what . . . do you think he meant when . . . you said to him that it's a shame---

[Mustapha]: When I said it's a shame they [were] trying to make [Keith] wear all those robberies, he said . . . "[Yeah], I know, but I gotta do what I gotta do to save my black a[**]."

[Investigator]: Did he go on further to say . . . what did he mean?

[Mustapha]: He basically said that he's going to go with whatever the detectives wanted him to say . . . [or] do to keep his part, the reason, the whole, you know---

[Investigator]: So . . . did he say . . . whatever they wanted him to say regarding Keith's involvement? In the robberies?

[Mustapha]: Yes. Basically [yeah]. He was like . . . they really want him bad and you know he was going to help him with whatever they needed done. Even though he knows and I know that Keith really didn't have nothing to do with all those robberies.

[Investigator]: Ok, so once again when you said to him it's messed up that . . . they wanted Keith . . . to take the hit for the robberies, in the conversation, he said, "[Yeah], I know." He acknowledged that Keith had . . . little or nothing to do with the robberies. Is that correct?

[Mustapha]: Yes.

Defendant's trial counsel provided a copy of Mustapha's statement to the State in November 2015, but did not subpoena Mustapha or call him to testify

8

at trial. In support of his petition for PCR, defendant alleged that "Mustapha's testimony could have impeached . . . Mansaray and the exculpatory testimony could have had the probability to persuade the jury not to convict [defendant]."

The PCR court heard oral arguments on defendant's petition on July 21, 2023. That same day, the PCR court issued an oral decision and accompanying order denying defendant's petition without an evidentiary hearing.

The PCR court found that defendant's first argument regarding the disparate sentences was procedurally barred by Rule 3:22-5, which bars grounds for relief that have been expressly adjudicated. The court further found that even if that argument had not been expressly adjudicated, it was procedurally barred by Rule 3:22-4, which bars grounds for relief that could have been raised in a prior proceeding. In addition, the PCR court found that defendant's argument regarding a disparate sentence was meritless because he was convicted of multiple first- and second-degree crimes, while his co-defendants pled guilty to a single offense.

Addressing defendant's argument that his trial counsel had been ineffective by failing to submit a sentencing memorandum, the PCR court pointed out that counsel had presented vigorous oral arguments at the first sentencing and there was "no legal support for the proposition that it's . . .

ineffective assistance for counsel to argue strongly in the client's favor in court, but not put those arguments in a brief." The PCR court also reasoned that the lack of a sentencing memorandum had no impact on defendant's sentences because, after he was resentenced, his sentences were affirmed.

Concerning the mitigating factors, the PCR court found that defendant's argument was "essentially moot" because "all [the] mitigating information was presented at the second sentencing and was considered by the [re]sentencing court, and . . . [the] lower; aggregate sentence was ultimately affirmed on appeal."

Lastly, regarding trial counsel's failure to call Mustapha at trial, the PCR court rejected that argument on two grounds. First, the PCR court found that defendant had violated Rule 3:22-10(c) by not submitting an affidavit or certification to show what Mustapha would have testified to at trial. Second, the court found that there was "no reasonable basis to conclude that the choice to not call [Mustapha] was anything other than a strategic choice."

Approximately two weeks later, on August 4, 2023, the PCR court issued an amended order and explanatory letter reaffirming its reasons for denying PCR, except for one of the reasons regarding defendant's claim as to trial counsel's failure to call Mustapha. The PCR court explained that, upon

reconsideration, its "second ground for denial . . . [was] not viable since there [was] no evidence in the record as to why trial counsel chose not to call [Mustapha] at trial." The PCR court then clarified that it was rejecting defendant's claim "solely on the ground of noncompliance with the affidavit/certification requirement."

Defendant now appeals from the July 21, 2023 and August 4, 2023 orders denying his petition for PCR.

## II.

On this appeal, defendant makes three arguments, which he articulates as follows:

> POINT I – PETITIONER'S EFFECTIVE SENTENCE OF LIFE IMPRISONMENT FOR KIDNAPPING AND RELATED CRIMES WHERE THE VICTIMS WERE PHYSICALLY UNHARMED IS UNFAIRLY DISPARATE TO HIS EQUALLY CULPABLE CO-DEFENDANTS, WHO RECEIVED A MAXIMUM OF FIVE YEARS.
>
> A. The PCR Court Wrongly Determined That Petitioner's Claim of Disparate Sentencing Was Procedurally Barred, Since a Disparate Sentencing Claim Qualifies As a Sentence Not Authorized By Law And Is Thus Cognizable Pursuant to [Rule] 3:22-2c.
>
> B. The [Sixty-Five] Year Disparity Between Petitioner And His Equally Culpable Co-Defendants Warrants A Remand For An

11

Evidentiary Hearing Pursuant To State V. Roach To Determine If The Sentence Is Unfairly Disparate.

POINT II – TRIAL COUNSEL FAILED TO ADVOCATE FOR PETITIONER AT SENTENCING BY FAILING TO ARGUE AGAINST THE STATE'S REQUEST FOR AN EFFECTIVE LIFE SENTENCE AND FAILING TO OFFER RELEVANT MITIGATING CIRCUMSTANCES.

A. Defense Counsel Was Ineffective By Failing To Submit A Memorandum Prior To The Sentencing Hearing In Order To Refute The State's, Which Presented Strong Victim Impact Evidence And Requested A Life Sentence; Counsel's Silence Allowed The State To Set The Narrative For The Initial Sentencing As Well As The Re-Sentencing Upon Remand.

B. Defense Counsel Was Ineffective At The Sentencing Hearing By Failing To Present Relevant Mitigating Circumstances As To Petitioner's Background And By Failing To Argue Against The State's Request For An Effective Life Sentence.

POINT III – PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO CALL AN AVAILABLE WITNESS CRITICAL TO HIS DEFENSE; SINCE THIS WITNESS WOULD CONTRADICT A STATE WITNESS CLAIMING PETITIONER COMMITTED THE CRIMES, THERE WAS NO LEGITIMATE STRATEGIC REASON FOR FAILING TO CALL THIS WITNESS.

When a PCR court does not conduct an evidentiary hearing, appellate courts "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 421 (2004). See also State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020) (applying a de novo standard of review). The PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

A.   Defendant's Claim That His Aggregate Sentence Was Disparate.

We reject defendant's claim that his aggregate sentence was disparate when compared to his co-defendants' sentences for both procedural and substantive reasons.

Defendant's disparate argument is procedurally barred both by Rule 3:22-4(a) and Rule 3:22-5. "A petitioner is generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal, R. 3:22-4(a), or that has been previously litigated, R. 3:22-5." State v. Nash, 212 N.J. 518, 546 (2013). Rule 3:22-4(a) directs:

> Any ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings is barred from assertion in a

proceeding under this rule unless the court on motion or at the hearing finds:

> (1)    that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding . . . .

Further, Rule 3:22-5 provides:

> A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.

"Under Rule 3:22-5, prior adjudication of an issue, including a decision on direct appeal, will ordinarily bar a subsequent post-conviction hearing on the same basis." State v. Afanador, 151 N.J. 41, 51 (1997).

In January 2020, before defendant's resentencing, defense counsel submitted a brief to the trial court arguing that "it would be a serious injustice to sentence [defendant] to a significantly longer sentence than his equally culpable co-defendants." Then, at the resentencing hearing on January 24, 2020, defense counsel asked the trial court "to consider uniformity, proportionality, and fairness" when resentencing defendant and highlighted his co-defendants' respective five-year sentences.

14

In resentencing defendant, the trial court considered, but rejected the proportionality argument, pointing out that "the co-defendants either [pled] guilty or were acquitted and this defendant is not in the same position as the co-defendants."

Thereafter, on defendant's direct appeal from his second sentence, he argued that his "sentence [was] substantially longer than the sentences all three [of his] co-defendants received." We, however, rejected that argument, stating:

> In imposing the new sentences, the trial court reviewed and analyzed defendant's multiple convictions in relationship to the more limited convictions and pleas of defendant's co[-]defendants. In that analysis, the trial court addressed and rebutted defendant's argument that his sentences were disproportionately high compared to the co[-]defendants' sentences.
>
> [Cuff III, slip op. at 6.]

We then affirmed defendant's reduced aggregate seventy-year sentence. Id. at 15-16. Accordingly, the PCR court properly rejected defendant's disparate sentencing argument under Rule 3:22-5 as the issue had already been adjudicated on the merits.

Moreover, even if we were to consider the substance of the disparity argument, it lacks merit. Defendant had been tried and convicted of nineteen offenses, while his co-defendants were either acquitted or pled guilty to a single

15                                                                    A-3998-22

offense. See State v. Williams, 317 N.J. Super. 149, 159 (App. Div. 1998) (noting that a co-defendant's cooperation with the prosecution can significantly impact the sentence imposed on the cooperating co-defendant).

B.    Defendant's Ineffective Assistance of Counsel Claims.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test:  (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey).  Under prong one, a defendant must establish "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  Under prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Here, defendant argues that his trial counsel was ineffective for two reasons:  (1) failing to submit a sentencing memorandum and present evidence of mitigating circumstances at his first sentencing hearing; and (2) for failing to call Mustapha as a witness at trial.

We reject defendant's first ineffective assistance argument because he has not shown any prejudice. His complaints concern his counsel at his first sentencing. Because he was resentenced, he has not shown, and indeed cannot show, any prejudice concerning what happened or did not happen during his first sentence.

The record also rebuts defendant's argument about a flow through effect because at his resentencing both his counsel and the court conducted a thorough resentencing analysis. In that regard, counsel at the resentencing argued for mitigating factors that were not expressly raised at the first sentencing and the court engaged in a "completely new and holistic analysis in resentencing defendant." Cuff III, slip op. at 11.

We also reject defendant's argument that his trial counsel was ineffective in failing to call Mustapha as a witness. Defendant relied on a report from an investigator rather than an affidavit or certification from Mustapha. In other words, the record contains no sworn statement from Mustapha. We are, therefore, left to speculate about what Mustapha might have testified and whether he was available at the time of trial. Consequently, defendant did not make a prima facie showing that his trial counsel was deficient. See R. 3:22-10(c) (stating that "[a]ny factual assertion that provides the predicate for a claim

17

of relief must be made by an affidavit or certification . . . and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing"); State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (explaining that "to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel[,] [h]e must allege facts sufficient to demonstrate counsel's alleged substandard performance . . . supported by affidavits or certifications").

In arguing that the PCR court erred, defendant relies on State v. Jones, 219 N.J. 298 (2014). In Jones, the defendant filed a petition for PCR alleging, in relevant part, that his counsel was inefficient for failing to "procure the appearance of an alibi witness who would have provided exculpatory and corroborative evidence that would have supported his defense." Id. at 301-02. The PCR court denied the defendant's petition without conducting an evidentiary hearing, and we affirmed. Id. at 302. Before the Supreme Court, the defendant argued that although no affidavit was submitted, the witness made a sworn and notarized statement to the prosecutor's office, which should have been sufficient for PCR. Id. at 308. The Court accepted that argument and remanded for an evidentiary hearing, reasoning:

> Counsel's practice is not in compliance with the Court
> Rules, which require that factual assertions in a petition

18

for post-conviction relief be made by affidavit or certification in order to secure an evidentiary hearing. See R. 3:22-10(c). The reason that we do not visit on defendant the failings of counsel in this instance is that we know what [the witness] told the prosecutor's office and how her testimony would have bolstered defendant's defense. A notice of alibi had been filed alerting the State about [the witness], so her testimony presumably was expected to be consistent with defendant's defense and would have provided some evidence of alibi. However, for whatever reason, defense counsel apparently did not secure her presence. His reasons for not doing so are better left to exploration through the PCR process.

[Id. at 312.]

Here, the PCR court correctly identified the differences between this matter and Jones. Although Mustapha made some potentially exculpatory comments to a defense investigator, unlike in Jones, he did not swear to his statement. Id. at 308. Further, nowhere in his statement did Mustapha indicate that he would be willing to directly contradict at trial the testimony of his cousin, Mansaray. Without more, defendant cannot support the presumption that Mustapha would have testified consistently with his prior unsworn statement.

Further, defendant also made no showing that if Mustapha had been called, his testimony would have rebutted Mansaray's trial testimony and led to an acquittal on some or all the charges. Without a specific sworn statement from Mustapha, we are left to speculate that his vague statements to an investigator

would have made a difference at trial where the State presented strong evidence of defendant's guilt.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3998-22