# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1969-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

A.D.,

     Defendant-Appellant.

_____

Argued March 16, 2020 – Decided May 5, 2020

Before Judges Sabatino, Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 10-06-1463.

Ed M. Weinstock argued the cause for appellant (Levin Weinstock Levin, attorneys; Joseph A. Levin, on the brief).

Melinda A. Harrigan, Assistant Atlantic County Prosecutor, argued the cause for respondent (Damon G. Tyner, Atlantic County Prosecutor, attorney; Melinda A. Harrigan, on the brief).

PER CURIAM

Defendant A.D.[1] appeals an order denying his petition for post-conviction relief (PCR) issued by Judge Bernard E. DeLury, Jr., who also presided over his trial, following a limited evidentiary hearing. We affirm.

I.

Tried by a jury, defendant was convicted on October 22, 2010 for three counts of second-degree endangering the welfare of a minor by engaging in sexual conduct with her when she was less than sixteen-years-old, N.J.S.A. 2C:24-4, and one count of third-degree aggravated criminal sexual contact of a minor when she was at least thirteen but less than sixteen years old, N.J.S.A. 2C:14-3(a). The victim was defendant's niece by marriage, Annette. Defendant was also tried on charges of sexual contact with Annette's younger sister Amanda, but the jury was unable to reach a verdict on those charges. He was sentenced to an aggregate twelve-year prison term. We affirmed defendant's conviction on direct appeal. State v. A.D., No. A-4343-10 (App. Div. March 10, 2014), certif. denied, 220 N.J. 573 (2015).

In January 2016, defendant filed a PCR petition seeking a new trial making the following ineffective assistance of counsel claims: (1) pre-trial

_____

[1] We use initials and pseudonyms to protect the privacy of the child victim and family members. R. 1:38-3(c)(9).

counsel and trial counsel (also referred to as "counsel") failed to discover exculpatory documents from the Division of Child Protection and Permanency (DCPP),[2] which defendant alleges are new evidence entitling him to a new trial; (2) trial counsel failed to inform defendant about trial co-counsel's (also referred to as "co-counsel") conflict of interest that became known during trial; (3) trial counsel elicited testimony from the two alleged victims' mother during cross-examination that was prejudicial to the defense, and appellate counsel failed to argue the issue on direct appeal; (4) trial counsel failed to identify and have testify the author of a medical report purporting the alleged victims had a "mental condition" causing them to lie about the allegations; (5) trial counsel failed to elicit testimony from defendant's son, who certified the pool at defendant's house was closed when the alleged incidents happened in the pool; and (6) trial counsel failed to procure an expert to testify the red marks on the victim's neck may not have been a hickey caused by suction from lip pressure.

On July 18, 2017, the judge issued a discovery order directing: (1) the DCPP to provide for in camera review all mental health professional reports regarding any allegations of illicit sexual acts perpetrated on the victims by

_____

[2] The DCPP was known as the Division of Youth and Family Services when the victims' allegation arose and were reported. L. 2012, c. 16, § 20.

defendant which the court was not in possession of; (2) the DCPP to make available to defendant's counsel and the State, without disclosure to any third party unless ordered by the court, any mental health professional reports contained in its records regarding the victims' allegations against defendant; and (3) Martin Finkel, D.O. to advise the State whether he authored a report regarding the victims' allegations against defendant, and the State to advise defendant of Dr. Finkel's response. Two months later, the judge ordered a DCPP report be delivered to Monica Weiner, M.D. for the limited purpose of her review and to advise whether she authored the report and if its contents were true and accurate.[3]

In October 2018, an evidentiary hearing was held on the limited issue of whether co-trial counsel had a conflict of interest in representing defendant because she had briefly coached a cheerleading squad which included Amanda, who testified at trial. Defendant's other PCR claims were decided on the papers without a hearing.

---

[3] Six months later in March 2018, the judge ordered PCR counsel to forward his supplemental brief to defendant without disclosure of any of the DCPP documents contained in the appendix but to provide defendant a summary of the documents. In July 2018, the judge compelled the DCPP to disclose to defendant any reports it had regarding defendant's alleged unlawful conduct with the victims.

On December 12, 2018, the judge issued an order and a fifty-eight-page written decision dismissing the petition without an evidentiary hearing. The judge denied relief; finding defendant failed to establish a prima facie case of ineffective assistance of counsel under the two-prong test of Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and State v. Fritz, 105 N.J. 42, 58 (1987), that the performances of trial counsel, trial co-counsel and appellate counsel were deficient and that, but for the deficient performance, the result would have been different at trial and on appeal.

II.

Before us, defendant contends:

POINT I

THE PCR[] COURT COMMITTED REVERSIBLE ERROR IN DENYING PETITIONER'S POST-CONVICTION RELIEF APPLICATION BASED UPON INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S PREJUDICIAL CONFLICT OF INTEREST UNDER RULE OF PROFESSIONAL CONDUCT 1.7.

POINT II

THE PCR[] COURT COMMITTED REVERSIBLE ERROR IN DENYING PETITIONER'S POST-CONVICTION RELIEF APPLICATION BASED UPON INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO OBTAIN ALL OF THE [DCPP] RECORDS, TO HAVE THE

5

JURY LEARN OF THE EXCULPATORY EVIDENCE CONTAINED IN THE [DCPP] RECORDS, AND TO DEEM THE [DCPP] MATERIALS NEWLY DISCOVERED EXCULPATORY EVIDENCE.

POINT III

THE PCR[] COURT COMMITTED REVERSIBLE ERROR IN DENYING PETITIONER'S POST-CONVICTION RELIEF APPLICATION BASED UPON INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO CALL A MEDICAL EXPERT TO TESTIFY, RESULTING IN HIS UNJUST CONVICTION.

POINT IV

THE PCR[] COURT COMMITTED REVERSIBLE ERROR IN DENYING [DEFENDANT'S] POST-CONVICTION RELIEF APPLICATION BASED UPON INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO ELICIT TESTIMONY THAT PETITIONER COULD NOT HAVE PERPETRATED ANY OF THE ACTS THAT ALLEGEDLY OCCURRED IN THE POOL.

POINT V

THE PCR[] COURT COMMITTED REVERSIBLE ERROR IN DENYING [DEFENDANT'S] POST-CONVICTION RELIEF APPLICATION BASED UPON INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S IMPROPER ELICITATION OF TESTIMONY THAT THE ACCUSERS' AUNT AND MOT[H]ER WERE SUBJECT TO SEXUAL ABUSE.

POINT VI

DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS OF THE LAW AND OF HIS RIGHT TO A FAIR TRIAL SINCE TRIAL COUNSEL FAILED TO OBTAIN[]AN EXPERT TO EXPLAIN THAT THE DEFENDANT DID NOT CAUSE THE MARK ON ANNETTE'S NECK.

Considering these arguments in light of the record and applicable legal standards, we affirm substantially for the reasons set forth by the judge in his well-written decision. We limit our discussion of the factual record pertinent to defendant's arguments and the reasoning applied by Judge DeLury.

A. Conflict of Trial Co-Counsel

Following trial counsel's cross examination of Amanda, whose testimony included assertions that defendant inappropriately touched her, and that Annette told her the hickey on her neck was given to her by defendant, there was a break and the jurors retreated to the jury room. Trial co-counsel then advised the judge she recognized Amanda from coaching her in cheerleading. Co-counsel stated, "I don't know if she recognized me. Her testimony seemed genuine. . . . I don't think it affected it, but I want the record clear." The prosecutor had no objection, and trial counsel indicated he did not perceive any prejudice. The judge stated "[t]o the extent that there's anything that needs to be waived, I take it the defense

waives it," to which trial counsel replied "[y]es." Although defendant was present during Amanda's testimony, the trial transcript does not indicate whether he left the courtroom before or during the colloquy.

At the PCR evidentiary hearing, defendant, counsel, and co-counsel all testified regarding the claim that co-counsel had a conflict of interest because she had coached Amanda. Defendant stated he was not present during the judge's conflict of interest colloquy at trial with counsel and co-counsel.

Counsel stated he did not remember whether defendant was in the courtroom at the time when he waived a claim of conflict of interest but he "would not have done something like that without a defendant being present." Counsel admitted he did not seek defendant's informed consent to have co-counsel remain on the defense team after her disclosure. As for co-counsel's duties on the defense team, counsel stated co-counsel assisted him with the case, but counsel "did all the cross, all the direct, the closing, [and] the opening." He stressed co-counsel's recognition of Amanda did not "make a darn bit of difference in the way [he] did [his] cross-examination and [his] preparation because [he] didn't know the young lady[.]"

Co-counsel testified when she realized she recognized Amanda, she immediately alerted trial counsel, defendant, the prosecutor, and the judge. Co-

counsel could not remember how she alerted defendant; she was uncertain whether she discussed it with him, whether defendant gave her informed consent, or whether defendant signed any document waiving a conflict of interest. However, she was certain defendant was in the courtroom when she informed the judge that she recognized Amanda.[4] Co-counsel's recollection of her duties representing defendant was consistent with counsel's testimony, stating she attended arraignments, status conferences and pretrial conferences, helped prepare for trial, and sat "second chair for most of [the trial.]" Regarding her interaction with Amanda, co-counsel stated she was not Amanda's regular coach but coached Amanda's cheerleading team – between fifteen to thirty girls – for about four sessions lasting approximately one to two hours each, in preparation for a local all-star football game. The practices took place throughout the trial. Co-counsel never had one-on-one personal contact or any type of personal conversation with Amanda during the practices or the actual game.

Defendant argues co-counsel's relationship with Amanda, constituted a per se conflict of interest under RPC 1.7(a)(2), which he did not waive through

---

[4] There is no reciprocal indication in the record that Amanda recognized co-counsel.

informed consent, thereby constituting ineffective assistance of counsel.  RPC

1.7(a)(2) provides:

> a lawyer shall not represent a client if the representation
> involves a concurrent conflict of interest.  A concurrent
> conflict of interest exists if . . . there is a significant risk
> that the representation of one or more clients will be
> materially limited by the lawyer's responsibilities to
> . . . a third person or by a personal interest of the lawyer.

Alternatively, defendant contends even if there was no per se conflict of interest,

the relationship was significant and prejudicial, and thus, constituted ineffective

assistance of counsel.

In his written opinion, Judge DeLury found trial counsel and co-counsel

were not ineffective due to a conflict of interest.  The judge noted that while he

did not have a specific recollection of how the persons in the courtroom were

positioned during Amanda's trial testimony, he rigorously applies Rule 3:16

regarding a defendant's presence during the trial proceedings.[5]  The judge

---

[5]  Rule 3:16 provides in pertinent part:

> (a) Pretrial. The defendant must be present for every
> scheduled event unless excused by the court for good
> cause shown.

> (b) At Trial or Post-conviction Proceedings. The
> defendant shall be present at every stage of the trial,
> including the impaneling of the jury and the return of

credited the testimony of counsel and co-counsel over defendant's PCR

testimony, explaining:

> [Defendant's] demeanor was guarded and he appeared rehearsed. He testified, in the [c]ourt's view, with less credibility, particularly with respect to his whereabouts in the restroom while the colloquy with the court was conducted during the trial. Perhaps the [defendant] was remembering a different instance that placed him outside the courtroom. However, his testimony and recollection of events are belied by both the record and the credible testimony of . . . [counsel] and [co-counsel].

Furthermore, the judge reasoned:

> I would not have conducted such a colloquy concerning a potential conflict without the presence of the defendant on trial. In hindsight, I could have conducted a more robust and probing colloquy. However, whatever shortcomings the court displayed in no way reflects upon the effectiveness of trial counsel. In sum, [defendant's] lawyers brought a potential conflict to the attention of the court. The court made an inquiry and acted in the presence of the accused. There was nothing

---

> the verdict, and at the imposition of sentence, unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.

11

else for trial counsel to do. As such, trial counsel was not ineffective. But, even if they were ineffective in their handling of the potential conflict, that would not have altered the outcome of the case. The jury returned its verdict only on the claims related to [Annette] and not [Amanda]. The actions of counsel in handling the issue had no negative impact on the outcome of the trial.

Finally, even if there was a conflict of interest, the outcome of the proceedings would not have changed. Because . . . [co-counsel] had such a limited role in the actual trial and both she and . . . [counsel] expressed to the [c]ourt that they could continue to do their job without any interference, there would not have been any difference in the proceedings having a bearing on the outcome.

We have no issue with the judge's factual findings because they are "substantially influenced by [his] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy[,]" and "are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).

Moreover, we find no fault in the judge's reasoning. There is no per se conflict of interest because the record does not indicate co-counsel was representing Amanda at the time. State v. Norman, 151 N.J. 5, 24-25 (1997) (holding a conflict of interest is either: (1) a per se conflict, where prejudice is presumed, absent a valid waiver; or (2) a "potential or actual conflict of interest

12

[which] must be evaluated and, if significant, a great likelihood of prejudice must be shown in that particular case to establish constitutionally defective representation of counsel"). In addition, the charges against defendant were being prosecuted by the Atlantic County Prosecutor's Office, and co-counsel was not being prosecuted by that office. State v. Cottle, 194 N.J. 449, 473 (2008) (finding a per se conflict arises when the same prosecutor's office is simultaneously prosecuting counsel and his client in different matters).

Given the absence of a conflict per se, defendant failed to establish he was prejudiced by co-counsel's limited involvement with Amanda. It was counsel who conducted all the witness examinations, performed the opening and closing, and argued all the motions. Co-counsel served as "second chair" with no active involvement during the proceedings except supporting counsel. There is no indication counsel was in any way affected by co-counsel's limited involvement with Amanda. Moreover, the lack of any significant relationship between co-counsel and Amanda is borne out by the fact co-counsel only recognized Amanda after she testified. Additionally, the transcript contains no indication in the substance of her testimony that Amanda was altering her testimony because of co-counsel's presence in the courtroom. In sum, there is no indication that Amanda's testimony was affected due to co-counsel's coaching of Amanda's

cheerleading squad.  See Norman, 151 N.J. at 25 (ruling a potential conflict "must be evaluated and . . . a great likelihood of prejudice must be shown . . . to establish constitutionally defective representation of counsel").

Defendant's reliance on State v. Lasane, 371 N.J. Super. 151 (App. Div. 2004) is distinguishable from the situation before us.  In Lasane, this court found the defendant could not rely on the advice of his counsel after his counsel had engaged in a sexual relationship with the defendant's mother.  371 N.J. Super. at 163.  Aggravating the matter, at the time of the relationship the defendant had not yet been sentenced and relied more on his counsel's advice regarding withdrawal of his guilty plea – which he did.  Ibid.  In contrast, defendant here has not shown how he was prejudiced because of the advice he received by counsel or co-counsel, or that his legal representation was somehow influenced by co-counsel's involvement with Amanda, which was improbable given co-counsel did not recognize Amanda until she ended her testimony and counsel only learned of the situation after he completed his questioning of Amanda.

B. Discovery of Division Documents

In advance of the trial, the pretrial judge ordered the DCPP to turn over for in camera inspection all its records regarding abuse allegations by Annette and Amanda against defendant and their mother to determine if the records could

14

be released to defendant's trial counsel. Upon reviewing the documents, the judge forwarded only the discoverable materials to the parties with the requirement that a protective order be signed limiting their use of the documents. Among the documents were Dr. Weiner's April 17, 2007 examination report of Amanda,[6] and Dr. Sapp's July 25, 2008 examination reports of Annette and Amanda.

None of the three medical examination reports included assertions the girls were lying about their accusations against defendant. Nonetheless, after his conviction and direct appeal, defendant executed a certification stating during his representation by trial counsel, a report authored by a mental health professional was shared with him "that indicated the allegations of the minor accusers . . . were incredible." Defendant asserted counsel failed to explain why he didn't call the mental health professional to testify on his behalf. Later, despite a concerted effort, PCR counsel could not locate the purported report, as pre-trial counsel, counsel, appellate counsel, and the trial prosecutor could not

---

[6] This report was initiated due to a concern of physical abuse, apparently at the hands of the girls' mother, and was not related to the allegations against defendant. However, the report, drafted after the sexual touching was alleged to have begun but before it was disclosed, contains Amanda's denial of any sexual abuse. We presume this report was released by mistake, as portions of subsequent examination reports authored by Mark Sapp, M.D., FAAP, referencing the prior incident of physical abuse, are redacted.

recall seeing it. That said, the transcript of defendant's trial contains a reference by the prosecutor to "the other doctor." In response to the PCR claim that this report exists, the prosecutor certified "the other doctor" she referred to during trial was Dr. Sapp because no other examinations of the girls directly related to the criminal charges were conducted.

At defendant's request during the PCR proceedings, Judge DeLury ordered discovery to confirm the existence of any undisclosed mental health professional's report in the possession of the DCPP, or whether Dr. Martin Finkel, Dr. Sapp's supervisor, authored any report regarding the girls. The order produced a variety of documents created after defendant's alleged sexual abuse occurred, but before Annette's disclosure of the abuse, related to an incident of physical abuse against Amanda by her mother. One such document, a DCPP safety assessment dated July 11, 2008, was written a few days after Annette's disclosure of sexual abuse and the author indicated a "no" answer to whether "[c]hild sexual abuse/exploitation is suspected and circumstances suggest that child safety may be an immediate concern." Nothing in the record indicates the author of the safety assessment knew of the sexual abuse disclosure Annette made against defendant a few days earlier.

Defendant contends the DCPP documents received after he filed for PCR contain exculpatory information and trial counsel was ineffective for failing to discover them before his trial. Defendant points to Dr. Wiener's April 17, 2007 report regarding Amanda's allegation of being physically abused by her mother, in which Amanda denied she was sexually abused before disclosure of defendant's sexual abuse against her and Annette, but after the sexual abuse occurred. Defendant argues had trial counsel obtained this report, he would have been aware that documents relating to the incident of the mother's physical abuse of Amanda also contained exculpatory information. Defendant also argues Dr. Sapp's report contains Amanda's statement that was contradictory to the one she gave to the police, and counsel failed to impeach her with it.

The judge denied defendant's request for a new trial based on newly discovered evidence because the DCPP documents: (1) did not include inconsistent information from the evidence presented at trial; (2) were requested by counsel but the pre-trial judge ruled they were undiscoverable; and (3) were not exculpatory, and if presented at trial would not have altered the jury's verdict. State v. Carter, 85 N.J. 300, 314 (1981) (providing for newly discovered evidence to warrant a new trial, a defendant must show that: (1) the evidence is material and not merely cumulative, impeaching, or contradictory; (2) the

17

evidence was discovered after the trial and was not discoverable by reasonable diligence beforehand; and (3) the evidence would probably change the jury's verdict if a new trial were granted).

As the judge properly found, there is no basis for defendant's claim that trial counsel was ineffective for not discovering the DCPP documents before Judge DeLury ordered their release to PCR counsel. Counsel's access to the documents was barred due to the pre-trial judge's ruling following his in camera review. Counsel cannot be blamed for that ruling, and there is no contention counsel did not make the proper argument to obtain release of the documents. The judge also correctly applied Carter in finding the newly disclosed evidence did not warrant a new trial. Furthermore, we significantly doubt the new documents detailing Annette did not disclose her alleged abuse to authorities prior to disclosing her mother's abuse are material to her and Amanda's allegations against defendant; thus, they would have been inadmissible. See State v. Russo, 333 N.J. Super. 119, 134 (App. Div. 2000) ("The materiality standard is satisfied [only] if defendant demonstrates that there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.").

C. <u>Failure to Call Witnesses</u>

Defendant asserts trial counsel was ineffective for failing to call the mental health professional who wrote the report indicating the girls' accusations were not credible and they had medical conditions keeping them from telling the truth.  According to defendant, a <u>Clawans</u>[7] charge that an adverse inference be drawn for failure to call the report's author, should have been made by counsel. Had the author of the report testified, defendant maintains he would not have been found guilty of sexually touching Annette.

Judge DeLury explained that the potential witnesses would have either been Drs. Sapp or Finkel, who would have testified to the general procedures for examining sexual assault victims, and not to their credibility as witnesses. Therefore, he found neither doctor would have presented any exculpatory evidence.  The judge further found counsel's failure to request a <u>Clawans</u> charge was irrelevant because the doctors would not have produced any evidence that would have been exculpatory, and their failure to testify was not unfavorable to defendant.  In short, the decision was trial strategy and did not prejudice defendant.

---

[7]  <u>State v. Clawans</u>, 38 N.J. 162 (1962).

There is no merit to defendant's claim on appeal that a report exists purporting the girls had a mental condition that prevented them from telling the truth surrounding the allegations and trial counsel failed to produce it at trial. Defendant's contention amounts to nothing more than a bald assertion as no such report has been verified by anyone other than defendant. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) ("[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance."). The record indicates, of the reports authored by Drs. Wiener and Sapp, none of them reference the alleged victims' credibility as claimed by defendant.[8] Defendant's bald assertion negates the need for any discussion regarding his entitlement to an evidentiary hearing on the issue or a Clawans charge. State v. Jones, 219 N.J. 298, 311-12 (2014).

D. Failure to Elicit Testimony the Pool Was Closed

Included among the various times defendant inappropriately touched her, Annette testified the first time occurred when defendant touched her buttocks

---

[8] Each girl was subject to two examination reports, one taken before and one after Annette's disclosure of the sexual abuse.

and vagina two times while they were alone when he was teaching her to do backstroke at his home swimming pool during the summer of 2006. During defendant's testimony, he stated on cross-examination he was never in the pool alone with Annette but made no claim the incident could not have occurred because the pool was closed.

Defendant's PCR petition contended trial counsel was ineffective for failing to elicit testimony that the pool incident was not possible due to the pool's closure. In support of PCR, defendant's son, executed a certification stating

> that back in 2006-2007 when [defendant] was trying to sell his house in question that the swimming pool was closed and no one had access to it as a result. I remember that from the time it was closed back then that it was never opened again unless the new owners decided to open it.

The judge rejected the claim, reasoning:

> Although [defendant's] son did not testify for the defense, his wife, did. She shared the home with . . . [defendant] where the pool was located. Since she lived with . . . [defendant], and the record is unclear as to whether [his] son lived with them, she was in a better position to testify to the pool closure than . . . [defendant's] son would be. However, [his wife] did not mention that the alleged incident was impossible due to the pool closure. Moreover, . . . [defendant] himself testified at trial and did not mention the impossibility of the alleged incident due to the pool closure. Therefore, trial counsel was not ineffective for failing to call the son as a witness because he instead

21

called [his wife], who was in a better position to testify about the issue.

There is no support in the record for defendant's argument that counsel was ineffective for failing to elicit testimony regarding the alleged closure of his pool. Defendant relies solely on his son's PCR certification alleging the pool was closed. Given defendant and his wife both testified at trial, they surely would have been in a position to inform the jury their pool was closed during the summer of 2006. They both testified about the pool incident, and neither stated the incident could not have occurred as Annette alleged because their pool was closed. The son was not living with his parents at the time he claimed the pool was closed and was not in a better position to attest to its closure. There was no explanation why he recalled this, and they did not. More importantly, there is no indication that counsel was made aware, or should have been aware, of the son's claim the pool was closed in the summer of 2006.

E. <u>Trial Counsel's Examination of the Girls' Mother</u>

During cross-examination of the girls' mother, trial counsel elicited testimony that because she and her sister were sexually abused as children, she stressed to her daughters at a young age to tell her if someone touched them inappropriately. Defendant contends counsel was ineffective for presenting this evidence to the jury. Defendant argues the testimony should not have been

admissible under N.J.R.E. 401, 402 and 403 as it was not relevant or probative and its admission constituted prejudicial reversible error because it had no bearing on whether defendant was innocent or guilty.

Judge DeLury disagreed, finding:

> [T]his testimony was relevant. It is likely . . . this testimony was elicited to demonstrate how the victim's mother was sensitive to the issues of abuse and why she had told her daughters about the existence of sexual abuse. This testimony was relevant to question why the victims waited two . . . years to come forward with their accusations against . . . [defendant], despite the fact that their mother encouraged them to talk to her about this type of situation.

We join the judge's reasoning. The elicitation of testimony regarding the girls' mother's own experience with sexual abuse was beneficial to defendant to cast doubt on the girls' credibility. Trial counsel's pointed questioning established the mother was sensitive to sexual abuse issues and she counseled her girls when they were young that it was okay to tell her if someone touched them inappropriately. Thus, trial counsel was able to argue that due to the girls delay in reporting the defendant's alleged abuse it was less likely the girls were pressured into not disclosing the abuse, and more likely they had fabricated the allegations.

Defendant also argues appellate counsel was ineffective for not contending on direct appeal the testimony regarding the sexual abuse history of the girls' mother and aunt prejudiced his defense because the jury could have rationally concluded that because their mother and aunt were sexually abused, so were the girls. The judge rejected this claim based upon his finding the testimony was relevant and was not prejudicial to defendant.

To obtain a new trial based on ineffective assistance of appellate counsel, it must be established that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. State v. Echols, 199 N.J. 344, 361 (2009). Appellate counsel will not be found ineffective if the failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found, either, that no error had occurred or that it was harmless. State v. Reyes, 140 N.J. 344, 365 (1995); see also State v. Harris, 181 N.J. 391, 499 (2004). Since trial counsel's strategy to elicit the testimony was sound, there was no reason why appellate counsel should have contended prejudicial error occurred.

F. Failure to Obtain an Expert Witness

Three witnesses testified at trial about a hickey on Annette's neck. Annette testified that on her birthday defendant put his mouth on her "private

area" and gave her a hickey on her neck. Amanda testified she saw a red mark on Annette's neck while the girls were playing basketball, and when she asked Annette about it, Annette told her defendant gave it to her. The girls' aunt, defendant's wife, also testified that a few days before Annette told her defendant abused her, she joked with Annette about what looked like a hickey on Annette's neck. She also recalled seeing what looked like hickey marks on Annette earlier, which Annette told her resulted from a wrestling incident with Annette's brother. Defendant's wife further suspected the hickey was given to Annette by her male cousin, who had spent a lot time alone with Annette in an empty room in their home.

In seeking PCR, defendant claimed trial counsel was ineffective for failing to obtain an expert to explain that the marks on Annette's neck could be something other than a hickey. PCR counsel had pictures of Annette's neck reviewed by a medical expert, Dr. Stephen Schleicher. In a letter to PCR counsel, the doctor wrote:

> Although suction from lip pressure is possible, I cannot state with medical certainty that this is the definitive cause of the redness. Pressure induced by a suction device or contact dermatitis cannot be excluded based on the provided photographs. Opinions given in this report are within a reasonable degree of medical certainty.

A-1969-18T4

In denying the ineffectiveness claim, Judge DeLury noted counsel explored alternate theories that defendant was not responsible for the mark on Annette's necks though testimony that: Annette's cousin or brother could have done it; Amanda stated another mark on Annette's neck was different than the mark Annette claimed was given to her by defendant; and that Annette and Amanda initially denied any inappropriate touching occurred. The judge also determined the decision not to present an alternate theory was trial strategy.

We conclude, as did the judge, defendant's claim that trial counsel failed to explore alternate theories on how the mark on Annette's neck was created is belied by the record. There were ample explanations offered to the jury that the marks on Annette's neck were not the result of defendant sucking on her neck. Furthermore, Dr. Schleicher does not provide an opinion within a reasonable degree of medical certainty that the mark was not a hickey because he admits it could be a hickey. Thus, defendant has not set forth a prima facie case that counsel was ineffective.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION