# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2438-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

OSVALDO RIVERA,

    Defendant-Appellant.

_____

> Submitted September 12, 2024 – Decided September 19, 2024
>
> Before Judges Berdote Byrne and Jacobs.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-09-2652.
>
> Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).
>
> Matthew J. Platkin, Attorney General, attorney for respondent (Deborah Bartolomey, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

In this appeal challenging the denial of a petition for post-conviction relief (PCR) and the denial of an evidentiary hearing, defendant asks us to consider whether the trial court erred in finding he failed to: (1) establish excusable neglect in filing his late petition; (2) present a prima facie case of ineffective assistance of trial counsel for not retaining an expert to contest the State's evidence supporting first-degree aggravated sexual assault; and (3) demonstrate his Sixth Amendment right to autonomy was violated pursuant to McCoy v. Louisiana, 584 U.S. 414 (2018). We agree with the trial court that defendant failed to demonstrate a prima facie case of ineffective assistance of counsel and conclude an evidentiary hearing was not necessary. Additionally, because the trial court addressed defendant's PCR petition substantively, the trial court's finding that defendant failed to demonstrate excusable neglect in filing a PCR petition out-of-time is moot and we decline to address the issue.

Following a jury trial, defendant Osvaldo Rivera was convicted of first-degree murder, in violation of N.J.S.A. 2C:11-3(a)(1) and (2) (count one); two counts of first-degree felony murder, in violation of N.J.S.A. 2C:11-3(a)(3) (counts two and three); first-degree attempted murder, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (count four); first-degree aggravated

sexual assault, in violation of N.J.S.A. 2C:14-2(a)(1) (count five); second-degree burglary, in violation of N.J.S.A. 2C:18-2(b) (count six); third-degree terroristic threats, in violation of N.J.S.A. 2C:12-3(b) (count eight); two counts of third-degree endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4 (counts nine and ten); fourth-degree unlawful possession of a knife, in violation of N.J.S.A. 2C:39-5(d) (count twelve); and possession of a knife for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(d) (count thirteen). On December 9, 2014, the trial court sentenced defendant to a life term subject to the No Early Release Act[1] on count one. Concurrent with the life term, defendant was sentenced to an eighteen-year term on count four, a seventeen-year term on count five, an eight-year term on count six, and a four-year term on count seven, with all remaining counts merged.

Defendant timely filed a direct appeal and argued "the court improperly invited the jurors to consider potential punishment by informing them of the degrees of the offenses and informing them that . . . some of the charges were 'lesser' offense[s]." We affirmed his conviction. State v. Rivera, No. A-3317-14 (App. Div. Sept. 29, 2017) (slip op.) Defendant's subsequent petition for

---

[1] See N.J.S.A. 2C:43-7.2.

certification to the Supreme Court was also denied. State v. Rivera, 232 N.J. 388 (2018).

Defendant filed his verified petition for PCR on June 26, 2021. Although the trial court found defendant's petition was barred by Rule 3:22-12(a)(1) because it was filed six-and-a-half years after the judgment of conviction and defendant failed to establish excusable neglect, it nevertheless addressed the merits of defendant's PCR claims. Concerning defendant's ineffective-assistance-of-counsel claim, the trial court held defendant failed to provide an affidavit or certification from an expert explaining what the expert could have testified to at trial. With respect to defendant's Sixth Amendment autonomy argument, the trial court found the right to autonomy established in McCoy was inapplicable because defendant's conviction was not on direct review at the time McCoy was decided.

On appeal, defendant raises the following contentions:

> Point I: THE COURT ERRED IN RULING THAT MR. RIVERA HAD FAILED TO ESTABLISH EXCUSABLE NEGLECT FOR HIS DELAYED FILING OF THE PETITION.

> Point II: THE COURT ERRED IN FINDING THAT MR. RIVERA HAD FAILED TO ESTABLISH THAT HE WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO AUTONOMY.

4

Point III: THE COURT ERRED IN RULING THAT MR. RIVERA HAD NOT PRESENTED A PRIMA FACIE CASE OF HIS TRIAL ATTORNEY'S INEFFECTIVENESS IN FAILING TO RETAIN AN EXPERT TO CONTEST THE CHARGE OF SEXUAL PENETRATION.

We reject these contentions and affirm.

## I.

We derive the following facts from the record and our 2017 unpublished opinion. In the early morning of September 2, 2012, a mother left her four children -- Tamara, Amanda, Alexa, and Damon[2] -- at home while she went to the hospital to treat an ear infection.

After she left, twelve-year-old Amanda fell asleep downstairs on the couch and her six-year-old brother Damon slept in their mother's bedroom on the first floor. Amanda awoke in the middle of the night to her mouth covered and a knife placed against her throat. Defendant whispered to Amanda that if she screamed, he would cut her throat. Defendant also said that "he was going to F [sic] [her] in [her] butt" and reiterated he would slit her throat should she scream. He proceeded to lift Amanda's dress, pull down her

---

[2] We use initials and a fictitious name to protect the victim's privacy interests. See R. 1:38-3(c)(12).

underwear, and lick her genitalia. Defendant then penetrated Amanda with his penis, ignoring her pleas to stop.

Damon came out of their mother's room, screaming and crying. Amanda was able to get out from under defendant and try to escape but defendant cut her throat in the process. Amanda ran to the front door, tried to unlock it, but slipped on her own blood. Defendant cut Amanda's throat a second time. Amanda got up off the floor, unlocked the door and ran to a nearby house. At the house, an ambulance was called. Damon's and Amanda's screaming also woke Tamara. When Tamara went downstairs, she saw Damon on the floor, in a pool of his own blood. Amanda's throat was cut so severely the treating EMTs were able to see her vocal cords. After intensive surgery and a month-long stay in the hospital, Amanda survived these injuries. Damon, however, could not be saved.

A blood trail leading out the back door of Amanda's home led police to two bloody knives and ended near Ferry Avenue. The blood trail continued and led police to defendant's parents' apartment. Defendant was later found in his friend's apartment that evening where police discovered blood on the apartment floor and bathroom sink and blood-stained clothes in the trash and bedroom.

At trial, Amanda identified defendant as the man who committed the crimes against her and her brother. She testified she could feel defendant's penis inside her vagina and how defendant slashed her throat twice. The State also proffered the testimony of a registered nurse who performed and assessed the results of Amanda's Sexual Assault Nurse Examiner ("SANE") exam the night of the assault. The nurse testified as to lacerations on each side of Amanda's labia minora and bleeding from the cervical os. She explained the bleeding could not have been from menstruation because Amanda was only two weeks into her menstrual cycle at the time of the attack. On cross-examination, defense counsel confirmed the lacerations to Amanda's labia minora were superficial, and the nurse did not observe any scrapes or abrasions to or near the cervical os. Defendant elected not to testify.

In summation, defendant's trial counsel addressed the aggravated sexual assault charge and focused on what she asserted was "a lack of forensic evidence to support the allegation of penetration." Based on this alleged lack of evidence of aggravated sexual assault, counsel claimed the State could not prove the corresponding felony murder charge. Defense counsel told the jury the following:

> Now, there is a different aspect with regard to the definition . . . underlying the felony in this and that is

not only can you consider aggravated sexual assault as the underlying felony, but you can also consider an attempt to commit an aggravated sexual assault. But I submit that there was no attempt in this matter either and . . . that [defendant] should be found not guilty of that charge.

. . . There is a lesser-included offense called sexual assault and I submit that that is what we have here. Not an aggravated assault, not an attempted aggravated assault, but a sexual assault.

[The victim] testified to a sexual assault. She testified that when her dress was lifted up the man . . . put his mouth on her stomach and then pulled down her panties and put his mouth on her vagina. This action constitutes a sexual assault as [the trial court] will define it for you.

II.

A trial court's decision to deny a PCR petition without an evidentiary hearing is reviewed de novo. See State v. Jones, 219 N.J. 298, 311 (2014).

A.  Defendant's Claim of Ineffective Assistance of Counsel.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey).

8

With respect to prong one, a defendant must establish that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Pursuant to prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Defendant maintains he established a prima facie case of ineffective trial counsel based upon his trial counsel's failure to secure expert testimony to contest the State's evidence that penetration occurred, undermining his conviction for first-degree aggravated sexual assault and felony-murder. He claims the testimony proffered by the State to support the charge "did not necessarily establish conclusive proof of penetration" and requires a remand for an evidentiary hearing. We disagree.

When a defendant claims trial counsel was ineffective for failing to hire or retain an expert, the defendant must demonstrate that an independent expert would reach a materially different conclusion from that proffered by the State. State v. Marshall, 148 N.J. 89, 211 (1997); see State v. Thompson, 405 N.J. Super. 163, 170-72 (App. Div. 2009) (holding a defendant establishes a prima facie case of ineffective assistance of counsel when trial counsel's failure to call an expert to testify "might well have had a significant impact on" the

State's conclusions of fact); see also State v. Porter, 216 N.J. 343, 355 (2013) ("[A] defendant is not entitled to an evidentiary hearing if the 'allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing[.]" (second brackets in original) (quoting Marshall, 148 N.J. at 158)). As aptly noted by the PCR court, defendant did not make any showing that a defense expert would have been able to opine defendant did not penetrate Amanda's vagina.

More importantly, defendant's argument ignores Amanda's testimony. Even if the State's expert testimony was not conclusive as to penetration, the jury was entitled to rely upon Amanda's testimony to establish it. Defendant makes a bald contention without any factual support. State v. Jones, 219 N.J. 298, 311-12 (2014) ("In order for a claim of ineffective assistance of counsel to entitle a PCR petitioner to an evidentiary hearing, "bald assertions" are not enough -- rather, the defendant 'must allege facts sufficient to demonstrate counsel's alleged substandard performance.'" (quoting Porter, 216 N.J. at 355)). Defendant has not shown that trial counsel's failure to retain a medical expert constituted ineffective assistance of counsel.

B. Defendant's Claim His Right to Autonomy was Violated.

Defendant claims his right to autonomy was violated because defense counsel admitted to a sexual assault on summation, but that claim likewise fails as it is belied by the record. In McCoy, "the defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." 584 U.S. at 417. When the defendant's counsel informed the defendant of his intention to concede guilt at trial to avoid the death penalty, the defendant became "furious" and instructed his attorney to not make the concession and instead pursue acquittal. Id. at 418-19. At a subsequent hearing, the defendant sought to terminate his counsel's representation and his counsel asked to be relieved from representation if another attorney was secured. Id. at 419. The trial court denied both requests due to the immediacy of the pending trial. Ibid. At the trial's outset, the defendant again made his objection known, protesting that his attorney was "selling [him] out" on the charged murders. Ibid. (brackets in original). Indeed, the defendant "opposed [the] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court." Id. at 424.

In stark contrast to McCoy, the record before us does not reveal a single instance of defendant seeking an "objective of the defense" inconsistent with

11

that taken by his attorney. Id. at 422. Defendant does not deny that a sexual assault occurred or attempt to contradict any of Amanda's specific testimony. Defendant's certification makes no mention of any disagreement between him and his attorney, and the trial transcript is equally silent as to any conflict. In his brief, defendant makes a singular claim that he "adamantly denied his guilt and that his trial attorney . . . subverted his stated objectives by conceding his guilt of second-degree sexual assault." However, he supports that contention by citing only the point heading in his PCR petition asserting his right to autonomy was violated. McCoy makes clear the right to autonomy is not violated without "express statements of the client's will to maintain innocence . . . ." McCoy, 584 U.S. at 424. Absent evidence of such statements, a defendant's autonomy claim fails. Because defendant cannot demonstrate his right to autonomy was violated, we need not address whether McCoy should apply retroactively and decline to do so.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2438-22