**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3855-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ALBERTO MARTINEZ,
a/k/a BERT MARTINEZ,

    Defendant-Respondent.

_____

Submitted March 12, 2026 – Decided April 20, 2026

Before Judges Bishop-Thompson and Puglisi.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 10-06-0399.

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for appellant (James E. Moore, Assistant Prosecutor, of counsel and on the briefs).

Jennifer N. Sellitti, Public Defender, attorney for respondent (Robert Carter Pierce, Designated Counsel, on the brief).

PER CURIAM

On leave granted, the State appeals from a June 18, 2025 Law Division order granting defendant Alberto Martinez's petition for post-conviction relief (PCR) following an evidentiary hearing.  We affirm.

I.

On May 10, 2010, three individuals were crossing the street in Wildwood when one of them tripped and stumbled.  While the three were laughing, defendant approached them on his bicycle and asked, "Are you laughing at me?" to which one of the individuals responded they were just laughing among themselves.  Defendant got off his bike, approached them with a baseball bat, struck one of the individuals in the head with it, and said, "Now you know not to laugh at me."  He got back on his bike and rode off.

Based on eyewitness statements and subsequent identification, police located and arrested defendant.  After waiving his Miranda[1] rights, defendant gave a statement acknowledging he believed the individuals were laughing at him and it "ticked him off."  He said he swung the bat in the victim's direction, aiming for his legs, and only "nipped" his nose with the bat.  Defendant stated "a mirror image" then appeared and hit the victim in the head.  He recalled the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3855-24

victim fell face-down on the ground, with his head "completely caved in" and bleeding.

Two weeks later, the victim died from blunt force trauma. Defendant was subsequently indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).

The record contains the following psychiatric evaluations: a January 21, 2011 evaluation by Douglas Smith, M.D., opining defendant was not competent to stand trial; a June 7, 2011 evaluation by Dr. Smith, opining defendant was competent to stand trial; a December 14, 2012 evaluation by Bonard Moise, M.D., opining defendant was competent to stand trial; and a February 3, 2012 evaluation by Carla Rodgers, M.D., opining defendant was not competent to stand trial and did not have the requisite state of mind to act knowingly at the time of the charged murder. The evaluations detail defendant's long history of mental illness and psychiatric hospitalizations.

According to Dr. Moise's report, the court previously found defendant competent to stand trial but after a March 2012 competency hearing, he was ordered re-hospitalized for reevaluation because he had decompensated in jail. Although the transcripts of the competency hearings are not in the record, the

court noted during a pretrial conference it found defendant competent to stand trial on February 4, 2013. The resulting March 18, 2013 order found defendant's competency was dependent on his "receiv[ing] adequate psychiatric treatment in a therapeutic milieu." Because defendant remained a high risk for self-injurious and assaultive behavior, he was remanded to the Ann Klein Forensic Center pending trial.

During a pretrial conference, trial counsel provided notice defendant asserted he was not guilty by reason of insanity (NGRI) based on Dr. Rodgers's evaluation. The week before trial, defendant executed a waiver of jury trial form, which was approved by the court without colloquy.

Defendant did not testify at trial and instead relied on the testimony of Dr. Rodgers, who opined defendant was NGRI. On cross-examination, the State confronted Dr. Rodgers with portions of defendant's custodial statement and the eyewitnesses' statements, which Dr. Rodgers had not seen before. The following questioning occurred on trial counsel's redirect:

> Q: [The prosecutor] went over a number of things with you, but . . . he said he was going to ask you if [the statements] would have any effect on your decision. He never did. So, I'm going to ask you. The information that he just read to you from [a witness]'s statement, would that have any impact on your decision that . . . [defendant] was, in effect, insane at the time?

A: At the time, it now appears that he did know what he was doing.

Q: Okay. And so, your opinion is that he's not subject to—

A: That's correct.

Q: He's not insane?

A: That's correct.

With the collapse of defendant's NGRI defense, the trial court found him guilty of both offenses. After merger, he was sentenced to fifty years in prison, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

In an unreported decision, we affirmed the trial court's denial of defendant's motion to suppress his custodial statement and the imposition of an extended-term sentence. State v. Martinez, No. A-3368-13 (App. Div. Oct. 12, 2016) (slip op. at 13-17). After granting defendant's petition for certification, the Supreme Court dismissed it as improvidently granted. State v. Martinez, 232 N.J. 366 (2017).

On March 27, 2023, defendant filed a self-represented petition for PCR. After the appointment of PCR counsel, he filed an amended petition alleging ineffective assistance of counsel based on trial counsel's failure to provide Dr. Rodgers with all discovery relevant to her expert opinion, as well as an improper

jury trial waiver. Although the petition was untimely, defendant contended the delay was due to excusable neglect caused by his mental illness. After hearing argument, the judge entered a June 24, 2024 order granting an evidentiary hearing, supported by a memorandum of decision explaining her reasons for finding the petition not procedurally barred.

The judge noted defendant suffered from schizophrenia and was housed in a special needs unit of the Department of Corrections (DOC). Defendant claimed the DOC destroyed documents relating to his case when he was transferred to administrative segregation, and he did not appreciate the time constraints of PCR because of his mental illness. PCR counsel explained defendant's timely direct appeal and petition were "done automatically on [defendant]'s behalf—while this PCR was not."

Although defendant did not provide his psychiatric records or documentation of his placement in segregation, the judge was "firmly convinced that enforcement of the procedural time bar would result in a fundamental injustice." She found defendant established a prima facie case of ineffective assistance of counsel and ordered an evidentiary hearing. After considering the testimony of trial counsel, Dr. Rodgers, and defendant, the judge issued a comprehensive memorandum of decision detailing her credibility

determinations, findings of fact, and conclusions of law supporting the order granting PCR.

According to the judge, trial counsel testified "he did not have many discussions with [defendant], but did with his brother, who was the primary spokesman for the family." He never discussed an insanity defense with defendant[2] and did "not specifically recall having [a] conversation [about whether to testify] with . . . [defendant,] as he rarely spoke to him and mostly interacted with [his] brother." Trial counsel further explained he primarily communicated with defendant's brother because he "could not tell if [defendant] grasped what he was saying to him."

Trial counsel stated he provided Dr. Rodgers the written eyewitness statements and recording of defendant's statement, "and assumed she had watched them as she later returned them to him." He "was surprised that Dr. Ro[d]gers testified that she did not review the statements of witnesses and [defendant] as provided to her by him." However, counsel "was not sure if he

---

[2] Although the decision indicates trial counsel "advised [defendant]'s brother that [defendant] did not want a jury trial," this appears to be an error. Trial counsel testified: "They told me that he didn't want a jury trial. I didn't ask him. His brother told me he did not want a jury trial. He wanted a trial by judge."

A-3855-24

met with her" prior to trial. The judge noted trial counsel had "poor memory recall of the specific details of the case."

Dr. Rodgers testified she reviewed everything counsel provided, which did not include any audio recordings. She explained her opinion changed at trial "based on the nature under which [defendant] gave his statement to the police—he spoke in a calm, goal-directed manner, spoke well[,] and had knowledge about what had just happened." Dr. Rodgers recalled she asked trial counsel "several times" whether she had everything and requested he "send her his complete file." She remembered seeing a discrepancy in another doctor's report, which referenced items she had not received, and followed up by asking trial counsel "three times to 'please send her everything' she needed."

Defendant testified he began having auditory hallucinations at age twenty-three, at which time he was institutionalized and diagnosed with schizophrenia. Although he was on medication, "the 'voices' would come and go." He further stated he did not recall the day of the murder.

Defendant said he met with trial counsel and discussed an insanity defense and waiver of a jury trial, but "he did not fully understand the right to a jury trial and told [counsel] 'the judge could make the decision.'" Trial counsel "told him that he chose [a] bench trial and that was how they would be proceeding," and

8

therefore defendant signed the waiver form. Defendant also explained "he often has trouble understanding English," and "there are times when he understands what people are saying to him and there are times that he does not."

Based on her credibility determinations, the judge found trial counsel did not provide Dr. Rodgers complete discovery nor did he prepare her for trial testimony. After reviewing governing case law, the judge determined defendant established "counsel's representation fell below an objective standard of reasonableness" by failing to "provide Dr. Rodgers with all evidence necessary to formulate her opinion." Counsel's additional failure to prepare Dr. Rodgers for trial testimony perpetuated the error because, had he done so, he would have realized she did not have the critical statements.

Counsel was also ineffective for failing to discuss the case with defendant and instead using his brother as an intermediary because defendant "was mentally ill and the brother 'understood.'" The judge noted counsel's reasoning "begs the question—was it because [defendant] speaks Spanish and did not understand him, or was he actively suffering from symptoms of schizophrenia and could not readily d[is]cern what [counsel] was telling him."

The judge further found defendant demonstrated "a reasonable probability that the result of the proceeding would have been different but for counsel's

A-3855-24

deficiencies." She noted "[defendant] understood he had a viable insanity defense—which he did but for Dr. Rodgers'[s] change of opinion mid-trial." Notably, the State did not retain an expert to refute Dr. Rodgers, so defendant's NGRI defense rested on her testimony. And although the State did not ask Dr. Rodgers whether the additional statements altered her opinion, trial counsel opened that door. As the judge remarked, "This line of questions and the resultant answers ensured the collapse of [defendant]'s NGRI defense."

Citing State v. Savage, 120 N.J. 594 (1990), the judge explained "strategic choices that are made after a lack of complete and thorough investigation are unreasonable and lend itself to a finding of counsel's deficiency." Thus, counsel's questioning of Dr. Rodgers, which was precipitated by his lack of preparation, was not reasonable and likely resulted in a "markedly different" result at trial. The judge concluded:

> Had [counsel] provided the expert with all available discovery, he would have known the insanity defense was not viable and could have pursued other potential defenses, including diminished capacity. [Counsel] clearly had sufficient evidence that [defendant] has a major mental illness dating back to his childhood and a history of violent behavior resulting from symptoms of that illness. . . . Further, [defendant] was only found competent to stand trial after multiple hospitalizations and treatment with psychotropic medi[c]ation. . . . At the time of the crime, [defendant] was not receiving treatment for his mental illness.

10

In her consideration of the State's arguments, the judge also addressed State v. Taccetta, 200 N.J. 183 (2009), and State v. Alvarez, 473 N.J. Super. 448 (App. Div. 2022). In those cases, the defendants professed innocence to charges under oath but then, in support of PCR, claimed they would have pleaded guilty had counsel effectively represented them during plea negotiations. In rejecting the defendants' PCR petitions, both cases held a defendant may not plead guilty while maintaining innocence of the charges.

Distinguishing those cases, the judge noted defendant maintained his innocence but admitted he swung the bat at the victim, at which point he claimed a "mirror image" struck the victim. In rejecting "[t]he State's insistence . . . defendant has to acknowledge his guilt," the judge reasoned a defendant can present an NGRI defense without testifying or admitting guilt. Akin to "a self-defense claim, both proceed with the premise that the conduct, not necessarily the crime, occurred but the conduct—if a crime it be—was excused or justified." Thus, defendant's petition for PCR was not precluded by his claim of innocence.

In addition to establishing a claim of ineffective assistance of counsel, the judge also found defendant demonstrated his waiver of a jury trial was not knowing or voluntary. Trial counsel testified he did not discuss with defendant his right to a jury trial or the waiver of that right "because [defendant] would

not have understood what he was saying," and instead counsel proceeded based on the consent of defendant's brother. Although the trial court accepted the written waiver form, "the record before th[e] PCR [judge wa]s unclear what, if any, voir dire of [defendant] took place at the time the court accepted the waiver."[3] Thus, the judge was not satisfied the record established a knowing, intelligent, and voluntary waiver of this constitutional right.

Having found defendant established both ineffective assistance of counsel and a fatally infirm jury trial waiver, the judge granted PCR. She stayed the order to permit the State to move for leave to appeal, which we granted.

The State raises the following points on appeal:

> POINT I.
> THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT DEFENDANT'S PETITION WAS NOT TIME-BARRED UNDER R[ULE] 3:22-12.
>
> A. DEFENDANT FAILED TO SHOW EXCUSABLE NEGLECT.
>
> POINT II.
> THE TRIAL COURT'S CREDIBILITY DETERMINATIONS WERE NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE.

---

[3] The record does not contain any voir dire concerning waiver of a jury trial.

A-3855-24

POINT III.
THE TRIAL COURT ERRED IN HOLDING THAT STATE V. TACCETTA AND ITS PROGENY DID NOT BAR DEFENDANT'S PETITION.

POINT IV.
THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT DEFENDANT'S PETITION WAS NOT TIME BARRED UNDER R[ULE] 3:22-4(a).

## II.

To succeed on a claim of ineffective assistance of counsel, a defendant must establish by a preponderance of the evidence both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). State v. Gaitan, 209 N.J. 339, 349-50 (2012). First, a "defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. A defendant must demonstrate "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. Because the Constitution requires "reasonably effective assistance," an attorney's performance may not be attacked unless it was not "'within the range of competence demanded of attorneys in criminal cases'" and instead "fell below an objective standard of reasonableness." Id. at 687-88 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

13

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under the second Strickland prong, a defendant must "affirmatively prove" with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693-94). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694).

"[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that [they] w[ere] denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "[R]ather, the defendant 'must allege facts sufficient to demonstrate counsel's

alleged substandard performance.'" State v. Jones, 219 N.J. 298, 312 (2014) (quoting State v. Porter, 216 N.J. 343, 355 (2013)).

Where the PCR judge conducts an evidentiary hearing, as in this case, we apply a deferential standard of review, accepting "the PCR court's factual findings, given its opportunity to hear live witness testimony" and "'uphold[ing] the PCR court's findings that are supported by sufficient credible evidence in the record.'" Gideon, 244 N.J. at 551 (quoting State v. Nash, 212 N.J. 518, 540 (2013)). However, we review a PCR judge's legal conclusions de novo. Nash, 212 N.J. at 540-41.

## A.

We first address the untimeliness of the petition and the credibility determinations underpinning the judge's findings. Under Rule 3:22-12 "a petition for PCR must be filed within five years of the challenged judgment of conviction, absent excusable neglect where enforcement of the bar would result in a 'fundamental injustice.'" State v. O'Donnell, 435 N.J. Super. 351, 368-69 (App. Div. 2014) (quoting R. 3:22-12(a)). "[C]ourts will find fundamental injustice when the judicial system has denied a 'defendant with fair proceedings leading to a just outcome' or when 'inadvertent errors mistakenly impacted a determination of guilt or otherwise wrought a miscarriage of justice.'" Nash,

212 N.J. at 546 (quoting State v. Mitchell, 126 N.J. 565, 587 (1992)) (internal quotation marks omitted). "To succeed on a fundamental-injustice claim, the petitioner must make 'some showing' that an error or violation 'played a role in the determination of guilt.'" Id. at 547 (quoting Mitchell, 126 N.J. at 587).

The State maintains the judge erred by finding defendant demonstrated excusable neglect and declining to dismiss defendant's petition for untimeliness. It emphasizes the need for "finality of judgments," particularly due to the prejudice it would face at trial if forced to relitigate this case over fifteen years after the first verdict. The State also challenges the judge's credibility findings, arguing she inappropriately gave defendant's and Dr. Rodgers's testimony more credence than trial counsel.

It is well settled our role is not to reweigh the credibility of the witnesses. The judge explained her assessment of the witnesses' credibility in which she considered their interest in the outcome, recall of details, candor, and demeanor. Crediting defendant's testimony, the judge found he suffered from longstanding, serious mental illness and a lack of English fluency, both of which impacted his ability to appreciate the time constraints of PCR.

Contrary to the State's contentions, the judge's finding of excusable neglect was not just supported by defendant's own self-serving statements

16

regarding his mental illness.  Defendant's longstanding mental health issues were detailed in the psychiatric evaluations.  He was deemed incompetent to stand trial for years and only gained competency through adherence to a medication regimen.  And contrary to his own interests, trial counsel testified: "[Defendant] was, as far as I was concerned, mentally ill.  And whether he understood what I was saying and really grasped it, I couldn't tell you, but his brother surely did."  Thus, multiple sources, including psychiatric experts, acknowledged defendant's mental illness and its impact on his ability to understand the proceeding.

As to the judge's finding counsel did not provide Dr. Rodgers with the statements, she fully explained the reasons for crediting Dr. Rodgers's recollection over trial counsel's.  Having reviewed the record in light of our deferential standard of review, we will not second-guess the judge's reasoned findings because they were supported by substantial credible evidence in the record.

Given the similar factual circumstances, we are satisfied the judge appropriately relied on State v. Hannah, 248 N.J. 148 (2021), in determining a fundamental injustice would have occurred if defendant was procedurally barred from pursuing his petition.  In Hannah, the Supreme Court held PCR courts have

the authority to revisit a defendant's untimely PCR claims to correct a "fundamental injustice." Id. at 178. Twenty-seven years after his conviction, Hannah filed an untimely successive PCR petition. Despite multiple procedural bars, the Court held he was entitled to a new trial because he had been denied effective assistance of counsel. Id. at 190. In doing so, the Court cautioned "[t]he passage of time alone cannot be a basis to bar relief to a defendant deprived of a fair trial because he was denied the opportunity to present a complete defense." Ibid. Like Hannah, defendant filed his PCR petition years out of time but, as detailed by the judge, demonstrated a fundamental injustice sufficient to overcome the procedural bar.

B.

We are also satisfied the judge did not err in rejecting the State's contention PCR was barred by Taccetta and Alvarez, neither of which concerned NGRI. In those cases, after being found guilty by a jury, the defendants' petitions for PCR claimed ineffective assistance of counsel during plea negotiations. Both defendants argued they would have accepted the State's offer if they had been properly represented. Taccetta, 200 N.J. at 185-86; Alvarez, 473 N.J. Super. at 451. However, both defendants maintained their innocence in sworn testimony, Taccetta during the PCR hearing and Alvarez during trial.

18

Taccetta, 200 N.J. at 186; Alvarez, 473 N.J. at 458-59. Because entering a guilty plea would have suborned perjury, both defendants could not establish Strickland's second prong. Taccetta, 200 N.J. at 186; Alvarez, 473 N.J. Super. at 461.

Here, defendant did not testify at trial but maintained his innocence throughout the proceedings, including the PCR hearing. However, his claim of innocence was not inconsistent with an NGRI defense nor did his petition hinge on perjured testimony. An NGRI defense permits defendants to assert innocence despite undisputedly committing the offense, primarily because they are incapable of understanding the "nature and quality" of their actions. State v. Jimenez, 188 N.J. 390, 407-08 (2006) (quoting N.J.S.A. 2C:4-1); see also Model Jury Charges (Criminal), "Insanity (N.J.S.A. 2C:4-1)" (approved Oct. 1988) (instructing "[a]part from [defendant's] general denial of guilt, the defendant maintains that [they are] not guilty of the crime charged by reason of insanity"). As the judge found, an NGRI defense can be presented without a defendant's testimony or explicit admission of guilt, and concurrent with a claim of innocence. Thus, Taccetta and its progeny do not preclude defendant's PCR petition.

C.

For the first time on appeal, the State argues the judge abused her discretion in concluding the petition was not barred under Rule 3:22-4(a)(1). It contends the reasons underpinning the petition were known to defendant when he filed his direct appeal, and therefore, he could and should have raised them at that time. We decline to consider an issue not properly presented to the trial court unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also State v. Witt, 223 N.J. 409, 418-19 (2015). Neither circumstance is present in this matter.

Nevertheless, this argument is unpersuasive because it disregards the judge's finding of fundamental injustice. Rule 3:22-4(a)(1) and (2) provide, in pertinent part, any ground for relief not raised on direct appeal is barred from being raised in a PCR petition unless the court finds:

> (1)    that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or

> (2)    that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice.

Because the judge found the enforcement of the time bar under <u>Rule</u> 3:22-12(a)(1)(A) would have resulted in a fundamental injustice, we are unconvinced she should have reached a contrary result under this rule.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division